## WAGNER *v.* DRAKE and others.

*(District Court, S. D. Iowa. August, 1887.)*

1. FEDERAL COURTS—RESTRAINING PROCEEDINGS IN STATE COURTS—REMOVAL CASES.

   Section 720 of the United States Revised Statutes, prohibiting a United States court from granting an injunction to stay proceedings in a state court, does not apply to proceedings in a state court in a case that has been legally removed from the state court into the United States court, but in such a case the writ will not be issued if the jurisdiction of the United States court of the case removed is doubtful.

2. SAME—LIQUOR NUISANCE—IRREPARABLE INJURY.

   A preliminary injunction will not be granted by a United States court to prevent a state court from enforcing its decree restraining plaintiff from selling wine and beer, and abating his saloon as a nuisance, under the state law, after the case has been removed to the United States court; as in such a case the injury to plaintiff would not be irreparable, but one capable of being fully compensated by damages recoverable in an action at law, in the event of the removed case being decided in his favor.

This is a petition for an injunction to restrain the defendants from the prosecution of certain proceedings in a civil suit originally commenced in the district court of Wapello county, Iowa, but since removed into this court, where said suit is now pending. The petition alleges substantially that the original suit was instituted in the state court under the recent prohibition law, for the purpose of restraining the plaintiff by injunction from the use of his property for the sale of wine and beer; that the property in question was erected and fitted up with proper fixtures and furniture before the enactment of the prohibition law, for the purpose of carrying on the sale of wine and beer, which was then a lawful business; that said law provides for the seizure and destruction of the same without compensation; that said suit was duly and regularly transferred to this court, and that the record of the state court has been filed in this court; that, notwithstanding said removal, the state court, refusing to recognize the same, has proceeded to enter a decree against the plaintiff, enjoining him from the further use of the premises mentioned for the sale and keeping for sale of intoxicating liquors. The petition further states that said defendants, clerk, sheriff, and attorneys, as well as said Drake, who was the plaintiff in the original suit, are about to institute proceedings against the plaintiff to compel him to obey said injunction, and that unless restrained by this court they will cause the petitioner to be deprived of the use of his property, and will also have a final decree granted by said state court perpetually enjoining the said plaintiff from the further use of his said property for the purpose aforesaid, and ordering the sheriff of said county to take possession of said premises, and to remove all furniture and fixtures therefrom, and to sell the same, and close said premises for one year from and after the rendition of said decree; and further ordering that the said fixtures and furniture found therein shall be sold to pay the cost of the proceeding and attorney's fees, and making the same a lien upon the said property. The

petition, therefore, prays that the court grant an injunction restraining said defendants from proceeding further in any manner whatever in said state court in said cause; and that they be restrained from instituting any contempt proceedings against said plaintiff for disobedience to said injunction from the state court.

*J. J. Smith* and *Anderson, Davis & Hagerman,* for petitioner.

*D. H. Emery,* for defendants.

LOVE, J. In the case of *Suess* v. *Noble, post,* 855, (decided at the present term,) this court held that no power exists in any court of equity to interfere by injunction with the prosecution and punishment of crimes and offenses in the courts of common law. We are in the present case to consider the relations of the federal to the state courts with respect to the power of the former to restrain proceedings in civil causes in the latter by the process of injunction.

It has always been the theory of the English and American chancery that the court does not, by injunction, interfere with the common-law courts, or their judges, but that its restraining power is exercised upon the suitor, who is within the jurisdiction of the court of equity. This theory has not always accomplished its purpose. It has not served at all times to avert strife and collision between the two judicial systems. It is well known that a flagrant quarrel raged in the reign of James I. between the Lord Chancellor ELLESMERE and Chief Justice COKE, growing out of the issuing of injunctions by the chancellor to restrain certain suitors from proceeding with their causes in the court of king's bench. This controversy grew to such violence that it was carried before the king in council, where it was settled in favor of the chancellor's jurisdiction. It is obvious that where the two courts sit under the same government, with a common superior tribunal exercising power by appeal or otherwise to settle their controversies, there is little danger of forcible collision between them. Such is the case in England, where the house of lords is the supreme court of appeal over all. The same is true of the judicial systems of the various states of the Union. But it is otherwise with respect to the relations between the federal and state courts. They exercise judicial power generally concurrent, within the same territory, over the same suitors and subject-matter, but under two distinct and separate governments. In general, there is no appeal from the one to the other. Except in a few special cases in which the supreme court of the United States may review the final judgment of the state courts, the two judicial systems are wholly independent of each other. It is manifest that in such a state of things the danger of violent collision, as well as diverse and conflicting judgments, must always be imminent. Where there is no common arbiter there is apt to be a resort to force. It is evident that the framers of the judicial act of 1793 clearly discerned this danger, and foresaw that the evils of conflicting jurisdiction would become most threatening from the claim of the courts of one jurisdiction to interfere by injunction with the prosecution of suits in the other jurisdiction. Hence they incorporated into that act a provision prohibiting, in express

terms, the granting of injunctions to stay proceedings in any court of a state, and this prohibition has been embodied in the Revised Statutes of the United States in the following terms:

"Sec. 720. The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

This is a sweeping prohibition. It extends to all cases over which the state court first obtains jurisdiction, and lawfully and properly retains the jurisdiction thus first acquired. But it is settled by the decisions which I will presently cite that, where the federal court first obtains jurisdiction, the act of congress does not apply, and where the state court having first obtained jurisdiction, the cause is lawfully transferred to the federal court, the act has no application to injunctions issued from the federal court after the removal.

It has been argued that the prohibition of the statute applies only to injunctions aimed at the state court, but not to injunctions issued only to parties before the state court; but this distinction is clearly unsound, and it has been repeatedly denied by the supreme court of the United States. See *Peck* v. *Jenness*, 7 How. 625; *Diggs* v. *Wolcott*, 4 Cranch, 179; *Haines* v. *Carpenter*, 91 U. S. 254; *Dial* v. *Reynolds*, 96 U. S. 340.

It has been decided, upon grounds that cannot be questioned, that the restriction in question is to be limited to actions begun in the state courts before proceedings commenced in the federal court, and that it is not applicable where the jurisdiction of the federal courts has first attached. *Fisk* v. *Union Pac. Ry. Co.*, 10·Blatchf. 518. This was a case originally brought in the United States circuit court for the Southern district of New York. That court rightfully held that, its jurisdiction having first attached, it would restrain the defendant corporation from taking steps in a state court to procure its dissolution.

But we are at present concerned only with removal cases. Suppose a cause has been duly and properly transferred under the act of congress from the state to the federal court, is it then competent for the federal court to restrain the parties litigant before it from further proceedings in the state court? Does the 720th section apply in such a case, so as to inhibit absolutely the issuing of any injunction in the federal court restraining the parties before it from proceeding in the state court with respect to the subject-matter of the suit? When a cause is legally removed to the federal court, all jurisdiction in the state court is at an end. The very cause itself being transferred, no case any longer exists in the state court. The state court is then absolutely without authority over the parties and subject-matter of the litigation. Whatever the state court could have done before the removal it is competent after removal for the federal court to do. An injunction in such case by the federal court, restraining the parties before it from proceeding elsewhere, is no injunction, within the spirit and intent of the statute staying proceedings in a state court, because after removal there is no proceeding left in the state

court, and no jurisdiction to be interfered with. If, after removal, a party could continue or renew his litigation in the state court, the whole purpose of the removal might be defeated.

The United States supreme court in *Kern* v. *Huidekoper*, 103 U. S. 485, decided that, "after the filing in the circuit court in a removal case of the record of the proceedings in the state court, the latter lost all jurisdiction over the case; and, being without jurisdiction, its subsequent proceedings and judgment are not, as some of the state courts have ruled, simply erroneous, but absolutely void;" citing *Gordon* v. *Longest*, 16 Pet. 97; *Insurance Co.* v. *Dunn*, 19 Wall. 214; *Virginia* v. *Rives*, 100 U. S. 313.

In *Insurance Co.* v. *Dunn* the court says that the act of congress, providing in such cases that, upon the proper petition and bond being filed, the state court "shall proceed no further in the suit," the further proceeding in the state court was a clear act of usurped jurisdiction. "The illegality was gross," etc.

In *Virginia* v. *Rives* the court says that "all proceedings in the state courts subsequent to the removal are *coram non judice*, and absolutely void."

Again, in *Kern* v. *Huidekoper* the court says that, "when the prerequisites for removal have been performed, the paramount law of the land says that the case shall be removed, and the case and the *res* both go to the federal court. The fact that the state court had possession of the subject-matter of the controversy cannot prevent the removal; and, when the removal is accomplished, the state court is left without any case, authority, or process by which it can retain possession of the *res*. * * *" Again: "When a bond for the delivery of the property has been taken, the bond, as the representative of the property, is transferred with the suit." 103 U. S. 485.

But the two cases in which it is directly decided that it is competent for the United States circuit court to issue injunctions, after removal, notwithstanding the prohibition in question against staying proceedings in the state courts, are *French* v. *Hay*, 22 Wall. 250, and *Dietzsch* v. *Huidekoper*, 103 U. S. 494.

The latter of these cases was an action of replevin in the state court. After its removal to the proper United States circuit courts by the plaintiff, the state court proceeded to render a judgment against him for a return of the property. An action thereupon having been brought against him and his sureties on the replevin bond, they filed their bill in the United States circuit court, praying that the plaintiff in the action in the state court on the replevin bond should be enjoined from further prosecuting it. The supreme court of the United States decided that the circuit court properly granted the prayer of the bill by which the injunction was made absolute and perpetual. The court said the statute forbidding injunctions to stay proceedings in the state courts was not applicable to cases thus removed from the state court. The court cites and approves *French* v. *Hay*, *supra*, in which the same proposition was established.

The foregoing decisions leave no doubt whatever of the power of this court to grant injunctions in cases which have been regularly removed from the state courts. But the power to grant injunctions, and the duty of the court to grant them, are wholly different propositions. What is a preliminary injunction? It is an order or decree without regular evidence; indeed, without proof,—since affidavits are not in any proper sense legal proofs. Such evidence, given *ex parte* without cross-examination, is notoriously misleading and delusive. A preliminary injunction is in fact the result of an interlocutory decree in advance of a regular hearing and plenary proofs. Hence a court always, in making orders upon such irregular proofs, runs a great risk of falling into grave error. A preliminary injunction should never be granted except in cases where irreparable injury is threatened, and the court, in granting such a remedy, should be certain that in attempting to prevent irreparable injury to one party it shall not do irreparable injury to the adverse party. See High, Inj. §§ 7–10, and the cases there cited. I do not doubt that in those removal cases, where rights of property are the direct subject of litigation, if any party were proceeding under the authority of the state court after the removal to sell, destroy, confiscate, or otherwise meddle with the property, so as to seriously impair its value, it would be the duty of the federal court to restrain and prevent such injurious acts; for otherwise the final decree of the court establishing the right of any claimant to the property would be useless and nugatory. The injury to be prevented would in such case be simply irreparable.

Such was the view which this court took of the so-called *Brewery Cases* when they were transferred from the state courts upon the authority of the decision of the circuit judge in *State* v. *Walruff*.[1] In these *Brewery Cases* the properties involved were of very great value. No bond of indemnity was required of parties who sued out injunctions in the state courts, aiming at their abatement and virtual destruction as nuisances. The consequences to the owners of such properties would have been simply ruinous, and the injury irreparable. These were clear cases, therefore, calling for the equitable discretion of this court in the granting of preliminary injunctions. Unless the court wholly abandoned its jurisdiction of causes thus removed here, and remanded them to the state courts, there seemed to be an imperative necessity for the granting of orders staying proceedings in the state courts, which threatened the utter destruction of the brewery property, the very subject of litigation. It was manifest that actions at law for damages by the owners of brewery properties injured to the extent of sums amounting to twenty, thirty, forty, and fifty thousand dollars would have proved wholly futile and nugatory, and therefore that the injury impending in such cases was irreparable; and it is only in cases of irreparable injury that the extraordinary remedy of preliminary injunctions ought to be applied.

But I am not able to view in this light the so-called *Saloon Cases*, to which the application now before me belongs. The damages in such

[1] 26 Fed. Rep. 178.

cases are not large; barely sufficient, indeed, in amount to bring them into this court. The buildings in which the saloon business is carried on are not like a great brewery which, with its machinery and appliances, cannot be converted to any use other than that for which they were intended. The chief loss of the saloon owner if his business be closed by the action of the state court is the value of the fixtures and the furniture used in his trade. These may be fully compensated in damages in actions at law, and it is perfectly clear in point of law that, if these saloon cases have been legally transferred to this court, and if the supreme court of the United States shall so decide, then every individual who, subsequent to the removal, proceeds against them in the state court, makes himself a trespasser; and, that as such he may be made liable for all damages that may accrue to the saloon owner. This principle is beyond question. The supreme court of the United States has decided repeatedly that when a case is legally removed to the United States court all further proceedings in the state court are without jurisdiction, and therefore are not merely erroneous, but absolutely null and void; and it is equally well settled, as a universal principle of law, that the judgment of a court without jurisdiction is no protection whatever to any one acting under it.

It is therefore clear that all persons, from the judge upon the bench to the lowest ministerial officer, doing injury to another in his person and property by virtue of a judgment rendered in a state court after a legal removal of the cause to the United States court, would, as a trespasser and wrong-doer, be liable in damages to the injured party; for, if these causes be removable at all, it must be upon the ground that the law as to them is unconstitutional and void. If, on the other hand, the supreme court of the United States shall finally decide that these saloon cases have not been legally removed from the state courts, then the owners of saloon property are entitled to no protection here, and it would be a usurpation of power by this court to give them protection by injunctions staying the rightful jurisdiction of the state courts.

There is another sufficient reason why this court should at present refuse the restraining orders prayed for in this case. The United States court should not, certainly, if its own jurisdiction is doubtful, interfere by injunction to stay proceedings in the state courts upon mere *ex parte* proofs in advance of any regular trial or hearing. It is a most serious matter to arrest by injunction all civil proceedings in the state courts in a large class of removal cases under the prohibitory law; and this court would not feel justified in so doing unless its own jurisdiction were quite clear. When the prohibition cases first came here from the state courts some time ago we were governed by the decision of the circuit judge in the case of *State* v. *Walruff*. That decision, unreversed, was as much the law of this court for the time being as a judgment of the supreme court of the United States would have been. The jurisdiction of this court was not, therefore, at that time, doubtful with respect to causes which were within the principle of the *Walruff Case*. But since that time appeals have been taken to the supreme court of the United States

from the Northern district of Iowa, and it appears that the judges of that court were equally divided upon the question of jurisdiction. These causes were therefore ordered to be remanded to the state courts of Iowa. This was the result of the equal division of opinion in the supreme court. See *Schmidt* v. *Cobb*, 119 U. S. 286, 7 Sup. Ct. Rep. 1373; *O'Malley* v. *Farley*, 119 U. S. 296, 7 Sup. Ct. Rep. 1373.

Now, it is quite impossible, in view of this division of opinion in the supreme court, and its consequent action, to say that the jurisdiction of this court over the cases now in question is not a matter of the gravest doubt. The action of the supreme court has thrown the most serious doubt upon our jurisdiction in such cases, and I would not feel justified in practically arresting and setting aside the jurisdiction of the state courts while the judicial power of this court in the matter is a subject of such uncertainty and doubt. The present application must therefore be denied.