# REAGAN v. MERCANTILE TRUST COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF TEXAS.

No. 1167.   Submitted April 13, 1894. — Decided May 26, 1894.

Reagan v. *Farmers' Loan and Trust Co.*, *ante*, 362, affirmed, followed, and applied to the facts in this case.

The fact that the Texas and Pacific Railway Company is a corporation organized under a statute of the United States, receiving therefrom the corporate power to charge and collect tolls and rates for transportation, does not remove that company from the operation of the act of the legislature of Texas of April 3, 1891, establishing a railroad commission, as to business done wholly within the State; but such business is subject to the control of the State in all matters of taxation, rates, and other police regulations.

As the case does not present facts requiring it, no opinion is expressed on the power of the commission as to rates on points on the railway outside of Texas.

THE case is stated in the opinion.

*Mr. C. A. Culberson*, Attorney General of the State of Texas, *Mr. H. C. Coke*, and *Mr. W. S. Simkins* for appellants,

*Mr. John F. Dillon, Mr. E. B. Kruttschnitt,* and *Mr. John J. McCook* for the Mercantile Trust Company, appellee.

*Mr. Winslow S. Pierce, Mr. R. S. Lovett,* and *Mr. T. J. Freeman* for the Texas and Pacific Railway Company, appellee.

MR. JUSTICE BREWER delivered the opinion of the court.

The case is similar to that just decided, in which the same parties were appellants and the Farmers' Loan and Trust Company and the International and Great Northern Railroad Company, appellees. It was commenced by the Mercantile Trust Company in the same court against the appellants and the Texas and Pacific Railway Company, with like purpose to restrain the enforcement of the railroad commission act, and with like result. The Mercantile Trust Company was trustee in a deed of trust executed by the Texas and Pacific Railway Company to secure an issue of bonds, and, as a citizen of New York, invoked the jurisdiction of the Federal court.

There are some matters of difference between the two cases which call for special notice. The Texas and Pacific Railway is a corporation organized under the laws of the United States, (16 Stat. 573,) and by reason of that fact it is earnestly insisted by counsel for it and the Trust Company that it is not subject to the control of the State, even as to rates for transportation wholly within the State. The argument is that it receives all its franchises from Congress; that among those franchises is the right to charge and collect tolls, and that the State has not the power, therefore, in any manner to limit or qualify such franchise. This is an important question and deserves consideration, even though in respect to other matters the facts should present a case exactly parallel to that just decided and calling for a like decision; because if the State has no control in the matter the decree should not be affirmed in part but *in toto.*

We are of the opinion that the contention of the railway

and Trust Companies cannot be sustained, and that the reasoning in the cases of *Thomson* v. *Pacific Railroad*, 9 Wall. 579, and *Railroad Company* v. *Peniston*, 18 Wall. 5, 36, leads to this conclusion.

In the first of those cases these facts appeared : The Union Pacific Railway Company, (Eastern Division,) a corporation created by the legislature of Kansas, received government aid in bonds and land, and, thus aided, constructed its road to become one link in the transcontinental line known as the Union Pacific system. After its construction, the legislature of Kansas having enacted a law laying certain taxes upon its property, a bill was filed to restrain the collection of those taxes, on the ground that the property of the company was mortgaged to the United States, and that it, under the Congressional grant, was bound to perform certain duties and ultimately pay five per cent of its net earnings to the United States, an obligation which would be greatly hindered if the taxes imposed should be collected. But this contention was not sustained, and while it was said by the Chief Justice, delivering the opinion of the court, that Congress had the power to provide an exemption from state taxation in such a case, there was no exemption in the absence of legislation to that effect. This decision was followed by that in the other case, in which a like exemption was sought of the property belonging to the Union Pacific Railroad Company, a corporation created, like the Texas and Pacific Railway Company, by an act of Congress, and also like the Kansas Company, aided by the government in lands and bonds, but here, too, by a majority of the court, the claim of exemption was denied. Mr. Justice Strong, in delivering the opinion of the court, said :

" It is, therefore, manifest that exemption of Federal agencies from state taxation is dependent, not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of

their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform. A tax upon their operations is a direct obstruction to the exercise of Federal powers.

" In this case the tax is laid upon the property of the railroad company precisely as was the tax complained of in *Thompson* v. *Union Pacific*. It is not imposed upon the franchises or the right of the company to exist and perform the functions for which it was brought into being. Nor is it laid upon any act which the company has been authorized to do. It is not the transmission of dispatches, nor the transportation of United States mails, or troops, or munitions of war that is taxed, but it is exclusively the real and personal property of the agent, taxed in common with all other property in the State of a similar character. It is impossible to maintain that this is an interference with the exercise of any power belonging to the general government, and, if it is not, it is prohibited by no constitutional implication."

Similarly we think it may be said that, conceding to Congress the power to remove the corporation in all its operations from the control of the State, there is in the act creating this company nothing which indicates an intent on the part of Congress to so remove it, and there is nothing in the enforcement by the State of reasonable rates for transportation wholly within the State which will disable the corporation from discharging all the duties and exercising all the powers conferred by Congress. By the act of incorporation Congress authorized the company to build its road through the State of Texas. It knew that, when constructed, a part of its business would be the carrying of persons and property from points within the State to other points also within the State, and that in so doing it would be engaged in a business, control of which is nowhere by the Federal Constitution given to Congress. It must have been known that, in the nature of things, the control of that business would be exercised by the State, and if it deemed that the interests of the nation and the discharge of the duties required on behalf of the nation from this corpora-

tion demanded exemption in all things from state control, it would unquestionably have expressed such intention in language whose meaning would be clear. Its silence in this respect is satisfactory assurance that, in so far as this corporation should engage in business wholly within the State, it intended that it should be subjected to the ordinary control exercised by the State over such business. Without, therefore, relying at all upon any acceptance by the railroad corporation of the act of the legislature of the State, passed in 1873 in respect to it, we are of opinion that the Texas and Pacific Railway Company is, as to business done wholly within the State, subject to the control of the State in all matters of taxation, rates, and other police regulations.

Another matter of difference between the two cases is this: The entire mileage of the International and Great Northern Railway was within the limits of the State of Texas, while the Texas and Pacific Railway Company owns and operates several hundred miles of road outside the limits of the State. No reference is made in the briefs of counsel to this difference, and probably there is nothing in the facts stated in the bill and cross-bill in respect to the earnings, operating expenses, and encumbrances of the property which would in any way affect the conclusion as to the reasonableness of the rates imposed; and we only notice the difference now to guard against the inference that such a fact is always without significance in the consideration of questions as to the reasonableness of rates imposed in one of the States within which the line of the carrier runs.

Beyond these two matters of difference we see nothing that calls for any comment. It is true the figures in respect to earnings, operating expenses, encumbrances, reduction of revenue, etc., are not the same in this as in that case, but still, relatively to each other, they have the same significance, and there are in the bills and cross-bills the same general averments. It would be useless, therefore, to encumber the record with a mass of figures for the sake of making it clear that the same conclusion must be reached here as in that case.

In this case also, as in that, the decision is that

*So much of the decree of the Circuit Court as restrains the defendants from proceeding under the railroad commission act to establish reasonable rates and regulations is set aside, but so much of it as restrains the enforcement of the rates already established is affirmed. The costs in this court will be divided between the parties.*