## MINNEAPOLIS BREWING CO. v. McGILLIVRAY et al.

(Circuit Court, D. South Dakota, S. D. October 8, 1900.)

**1. INTOXICATING LIQUORS—STATE REGULATIONS—INTERSTATE COMMERCE.**

Sess. Laws S. D. 1897, c. 72, designated in its title as an act to provide for the licensing, restriction, and regulation of the business of the manu-, facture and sale of liquors, and which not only imposes a license on all manufacturers and dealers, but also contains provisions imposing regula- tions and restrictions upon the business, and requires all licensees to give bond to comply with such provisions, is not merely a revenue meas- ure, but is a law enacted in the exercise of the police powers of the state, within the meaning of the Wilson act (26 Stat. 313), which provides that liquors transported into a state as a subject of interstate commerce shall on their arrival therein be subject to the operation and effect of the laws of such state enacted in the exercise of its police powers; and hence the fact that said state statute requires a wholesale dealer in liquors who maintains a warehouse in the state to pay a license does not render it unconstitutional, as an attempt to regulate interstate commerce, as ap- plied to a dealer who manufactures his liquors in another state, and ships them therefrom to his warehouse, and there sells them only in the orig- inal packages.

**2. SAME—INTERSTATE COMMERCE—LIMIT OF POLICE REGULATIONS BY STATE.**

The purpose of the Wilson act (26 Stat. 313) was to place liquors which have been transported into a state as subjects of interstate commerce, on their arrival therein, on an exact equality, so far as relates to the right to sell the same, with liquors manufactured in the state; and to that extent only did congress, by such act, give its consent that the state might, in the exercise of its police powers, impose regulations and restric- tions upon the sale of such liquors in the original packages.

3. SAME—VALIDITY OF STATUTE DISCRIMINATING IN FAVOR OF DOMESTIC LIQUORS.

Sess. Laws S. D. 1897, c. 72, § 1, imposes a license tax upon the business of selling only brewed or malt liquors at wholesale of $600 per annum; "said license to be paid in each township, precinct, town or city in which said wholesaler has or operates a warehouse or depository." It further provides that "no person, firm or corporation having a manufacturer's license in this state on brewed or malt liquors under this act shall be liable to pay a wholesale dealer's license on the product of such manufactory." The manufacturers' license under such act is $400. *Held,* that such act, in permitting a manufacturer in the state to maintain warehouses for the sale of his product without license, while requiring a license on each warehouse maintained for the sale of brewed or malt liquors produced in other states, imposes a discriminating tax upon interstate commerce, which renders the provision for a license on wholesale dealers unconstitutional and void.

4. STATUTES—CONSTITUTIONALITY.

The constitutionality of a statute is not determined by what has been actually done thereunder, but by what may be done by virtue of its provisions.

5. EQUITY JURISDICTION—ENJOINING ENFORCEMENT OF STATUTE—ADEQUATE REMEDY AT LAW.

A federal court of equity has jurisdiction of a suit to enjoin the enforcement of a state statute which is unconstitutional and void, and under which the authorities threaten to seize complainant's property and destroy his business unless he pays a license thereby imposed; the remedy at law in such case being inadequate.

6. JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE—ENJOINING ENFORCEMENT OF STATUTE.

A suit to enjoin the officers of a state from enforcing an unconstitutional statute which subjects the complainant to a seizure of his property, and the closing of his place of business, for his failure to pay a license imposed by such statute, is not an action against the state, within the meaning of the eleventh amendment to the constitution, and is one of which a federal court of equity has jurisdiction.

7. INJUNCTION—GROUNDS—CRIMINAL PROSECUTION.

A court of equity has no jurisdiction to enjoin the commencement of criminal prosecutions against a complainant, although the statute under which their institution is threatened is unconstitutional.

In Equity. On demurrer to bill.

E. T. Taubman (Albert C. Cobb and J. O. P. Wheelwright, of counsel), for plaintiff.

John L. Pyle, Atty. Gen., John H. Perry, and C. J. Porter, for defendants.

CARLAND, District Judge. The above-entitled action has been submitted on general demurrer to the bill. The bill alleges the following facts: The plaintiff is a corporation created, organized, and existing under and by virtue of the laws of the state of Minnesota, and having its principal place of business in the city of Minneapolis, in said state. That the defendants are citizens of the state of South Dakota, D. A. McGillivray being the sheriff of the county of Lake. McGovern is the chief of police of the city of Madison, in the state of South Dakota; C. J. Porter is the state's attorney in and for said Lake county; and the defendants Bingham, Buxton, and Schuster constitute the board of county commissioners of said county, and are

the officers upon whom the duty is cast by law of enforcing the provisions of chapter 72 of the Session Laws of South Dakota for the Year 1897. That at all times mentioned in the bill the plaintiff was, and now is, engaged in extensively manufacturing and selling beer and other malt liquors, having its brewery or place of manufacture in the city of Minneapolis. That for more than a year last past plaintiff has owned and maintained, and still owns and maintains, in the city of Madison, in the county of Lake, in the state of South Dakota, a warehouse or depository in which, during said times, it has been storing, in original packages, a portion of the product of its said brewery, under the circumstances and for the purposes hereinafter detailed. That at frequent intervals, in the ordinary and usual course of its business, during the times aforesaid, it has been shipping from its brewery in Minneapolis to its said warehouse at Madison, in barrels, kegs, and bottles, a portion of its manufactured product, for storage there until sold by plaintiff, as a wholesaler, to its various customers in South Dakota in the same original packages in which it was so put up, shipped, and stored. That plaintiff has no brewery or place of manufacture within the state of South Dakota, and it has not made, nor does it propose to make, any sales there, except from the product of its brewery at Minneapolis, and in original packages. That plaintiff's business, as it has always been conducted and carried on in said city of Madison, and as plaintiff in the future intends to conduct and carry it on, consists solely in its maintaining said warehouse for the purposes hereinbefore set forth, and in the removal of the beer stored therein for sale and delivery in original packages by plaintiff, as a wholesaler, among its customers in the state of South Dakota. That in order for plaintiff to safely and economically transport its said product from the state of Minnesota to the state of South Dakota, for sale and distribution there among its customers in original packages, and in order that said product may be preserved and kept from becoming spoiled in transit, it is necessary to have said warehouse in said city of Madison; and, for the purposes hereinbefore stated, for more than one year last past said plaintiff has been conducting said business and maintaining said warehouse at said city of Madison, and intends and desires so to do in the future, and would now be so conducting said warehouse and said business, except for the unlawful and wrongful acts of the defendants as hereinafter set forth. That during the times aforesaid it has had, and now has, a resident agent at said city of Madison in charge of said warehouse, and in the sale and distribution of the product from time to time stored therein. That plaintiff's said business at said city of Madison, connected with the maintenance of said warehouse, and for the sale of its said product stored therein and distributed therefrom, has been exceedingly profitable to plaintiff, and that with the year ending July 1, 1900, its sales of beer stored in said warehouse and distributed therefrom exceeded $10,000, from which it derived a profit of more than $2,000; and, if plaintiff is allowed to continue in the operation and maintenance of said warehouse and in the conducting and operation of its said business at said Madison without being molested or disturbed by the defendants, its annual profits therefrom will exceed

the sum of $2,000. That plaintiff has invested in said warehouse, in the construction of the same, and in the expenses incidental thereto, a sum exceeding $1,500, and that said warehouse is not adapted or suitable for any purpose except the one to which it has heretofore been put by plaintiff. That since the 1st day of July, 1900, the defendants, in their official capacity aforesaid, and claiming the right so to do under and pursuant to the provisions of chapter 72 of the Session Laws of South Dakota for the Year 1897, have demanded of plaintiff that it pay for continuing to carry on its said business at said city of Madison, and for the continued operation and maintenance of its warehouse at that place, the license fee of $600 specified in section 1 of said act upon the business of selling only brewed or malt liquors at wholesale, and that plaintiff declined and refused to pay said fee upon the ground that said statute so requiring its payment was unconstitutional and void. That upon the refusal of plaintiff to pay said license fee, and for the alleged reason that it did not pay the same, the defendants, claiming to act in their official capacity as aforesaid, and claiming to be authorized by the statute aforesaid, wrongfully and unlawfully threatened to close said warehouse so operated and maintained by this plaintiff at said city of Madison as aforesaid, and wrongfully and unlawfully threatened to prosecute criminally this plaintiff and its said local agent under section 5 of said act, and to so prosecute for each violation committed on each day if said warehouse was continued to be operated as aforesaid by plaintiff, or if plaintiff continued to transact the business theretofore transacted by it at said Madison. That plaintiff, by reason of said threats, and in order to avoid a multiplicity of criminal suits against plaintiff and its local agent, and the expense and cost that would have been necessarily incurred in connection therewith, and in order to prevent having a large amount of its manufactured product stored in said warehouse without being able to sell or dispose of the same as it had been in the habit of doing since the 1st day of July, 1900, has closed its said warehouse, and has ceased to ship to it or store therein any of its product, and has ceased to use it as a distributing depot. That plaintiff is desirous of at once opening up its said warehouse at said city of Madison, and of using and employing the same in the manner and for the purposes only for which it has heretofore been used and employed by plaintiff, and it is about so to do; and, unless the defendants are restrained and enjoined from so doing, because of plaintiff's refusal and failure to pay said unlawful license fee they, the said defendants, will permanently close said warehouse, and subject plaintiff and its said local agent at Madison to a multiplicity of suits and innumerable criminal prosecutions, and utterly ruin and destroy plaintiff's said business at said city of Madison. The plaintiff prays that said statute of the state of South Dakota may be adjudged to be unconstitutional and void, and that the defendants be permanently restrained and enjoined from attempting to enforce payment from plaintiff of said unlawful license fee of $600, and from in any wise interfering with plaintiff's said warehouse at said city of Madison, and its said business connected therewith.

The title of chapter 72 of the Session Laws of South Dakota for the Year 1897 is as follows:

"An act to provide for the licensing, restriction and regulation of the business of the manufacture and sale of spirituous and intoxicating liquors."

Section 1 of said act is as follows:

"That in all townships, precincts, towns and cities of this state there shall be annually paid the following license upon the business of the manufacturing, selling or keeping for sale by all persons whose business in whole or in part consists in selling or keeping for sale, or manufacturing in this state, distilled, brewed or malt liquors, or mixed liquors, as follows: * * * Upon the business of selling only brewed or malt liquors at wholesale, $600 per annum, said license to be paid in each township, precinct, town or city in which said wholesaler has or operates a warehouse or depository; upon the business of manufacturing brewed or malt liquors, $400 per annum. * * * No person, firm or corporation paying a manufacturer's license in this state on brewed or malt liquors under this act shall be liable to pay a wholesale dealer's license on the product of such manufactory. * * *"

Section 2 provides as follows:

"* * * Wholesale dealers shall be held and deemed to mean and include all persons who sell or offer for sale or deliver such liquors or beverages in quantities of five gallons or more at any one time to any person or persons."

Plaintiff claims that said chapter 72 is unconstitutional and void: First, that it is repugnant to that clause of the constitution of the United States providing that the congress shall have power to regulate commerce among the several states; second, that it is repugnant to that clause of the constitution of the United States declaring that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states; third, that it is repugnant to that clause of the constitution of the United States declaring that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; fourth, that it is repugnant to that clause of the constitution of the United States in which it is declared that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

In Vance v. W. A. Vandercook Co., 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100, the supreme court lays down the following propositions as being beyond dispute:

"First. Beyond dispute, the respective states have plenary power to regulate the sale of intoxicating liquors within their borders, and the scope and extent of such regulations depend solely on the judgment of the lawmaking power of the states, provided always, they do not transcend the limits of state authority by invading rights which are secured by the constitution of the United States, and provided, further, that the regulations as adopted do not operate a discrimination against the rights of residents or citizens of other states of the Union. Second. Equally well established is the proposition that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the constitution of the United States to congress, and hence that a state law which denies such a right, or substantially interferes with or hampers the same, is in conflict with the constitution of the United States. Third. It is also certain that the settled doctrine is that the power to ship merchandise from one state into another carries with it, as an incident, the right in the receiver of the goods to sell them in the original packages, any state regulation

to the contrary notwithstanding; that is to say, that the goods received by interstate commerce remain under the shelter of the interstate commerce clause of the constitution until by a sale in the original package they have been commingled with the general mass of property in the state. This last proposition, however, whilst generically true, is no longer applicable to intoxicating liquors, since congress, in the exercise of its lawful authority, has recognized the power of the several states to control the incidental right of sale in the original packages of intoxicating liquors shipped into one state from another, so as to enable the states to prevent the exercise by the receiver of the accessory right of selling intoxicating liquors in original packages except in conformity to lawful state regulations. In other words, by virtue of the act of congress the receiver of intoxicating liquors in one state, sent from another, can no longer assert a right to sell, in defiance of the state law, in the original packages, because congress has recognized to the contrary. The act of congress referred to (26 Stat. 313, c. 728) was approved August 8, 1890, and is entitled 'An act to limit the effect of the regulations of commerce between the several states and with foreign countries in certain cases.' It reads as follows: 'That all fermented, distilled or other intoxicating liquors or liquids transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.' "

In Scott v. Donald, 165 U. S. 58, 17 Sup. Ct. 265, 41 L. Ed. 632, the supreme court said:

"That law [the act of congress above quoted] was not intended to confer upon any state the power to discriminate injuriously against the products of other states in articles whose manufacture and use are not forbidden, and which are therefore the subjects of legitimate commerce. When that law provided that all fermented, distilled, or intoxicating liquors transported into any state or territory, remaining therein for use, consumption, sale, or storage therein, should, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and should not be exempt therefrom by reason of being introduced therein in original packages or otherwise, evidently equality or uniformity of treatment under state laws was intended. The question whether a given state law is a lawful exercise of the police power is still open, and must remain open, to this court. Such a law may forbid entirely the manufacture and sale of intoxicating liquors, and be valid. Or it may provide equal regulations for the inspection and sale of all domestic and imported liquors, and be valid. But the state cannot, under the congressional legislation referred to, establish a system which, in effect, discriminates between interstate and domestic commerce in commodities to make and use which are admitted to be lawful."

The supreme court again says in the case of Vance v. W. A. Vandercook Co., 170 U. S. 447, 18 Sup. Ct. 677, 42 L. Ed. 1104:

"The plain purpose of the act of congress having been to allow state regulations to operate upon the sale of original packages of intoxicants coming from other states, it would destroy its obvious meaning to construe it as permitting the state laws to attach to and control the sale only in case the states absolutely forbade sales of liquor, and not to apply in case the states determined to restrict or regulate the same."

Counsel for plaintiff claim that chapter 72 of the Session Laws of South Dakota for the Year 1897, in effect, is not a law enacted within the police power of the state, but that it is merely a revenue measure,

enacted for the purpose of collecting revenue, and therefore not within the permission granted by congress to the states to regulate the sale of intoxicating liquors. I have carefully examined the whole act, and, after considering its various provisions and its title, I am unable to come to the conclusion that it is clearly without the police power of the state; and certainly, if there exists any doubt upon the question, it should be resolved in favor of the law being within the police power. Its title states that the law is enacted to provide for the licensing, restriction, and regulation of the business of the manufacture and sale of spirituous and intoxicating liquors. It is true, the law fixes a license fee for the sale of intoxicating liquors, by imposing a certain annual license fee upon different kinds of dealers in intoxicating liquors, but this fact does not necessarily render it a revenue measure. A license fee may be lawfully connected with a measure within the police powers of a state which has for its object the preservation of the peace, good order, health, morality, or security of the people. In support of this contention counsel cite the recent case of Pabst Brewing Co. v. City of Terre Haute (C. C.) 98 Fed. 330. In that case the court decided that the ordinance of the city of Terre Haute imposing a license fee was purely a revenue measure; and, the court having reached that conclusion, of course was bound to hold it unconstitutional, as being a burden upon interstate commerce, and not within the permissive powers contained in the act of congress of 1890. But the act of the legislature of South Dakota now under consideration is a very different law, in its whole scope and purpose, than the ordinance of the city of Terre Haute. By referring to some of the provisions of certain sections of the law, and the headnotes to those sections, we gather that the law was not intended as a revenue measure merely:

Section 1 fixes the amount of the annual license for different dealers in intoxicating liquors. Section 2 defines who shall be considered retail dealers and wholesale dealers. Section 3 provides for the filing of a statement in advance of obtaining a license. Section 4 prescribes the duties of the county treasurer in relation to the enforcement of the act. Section 5 provides a penalty for the violation. As section 5 directly bears upon some features of this action, it will be quoted in full. It reads as follows:

"If any person or persons shall engage or be engaged in any business requiring the payment of license under section one (1) of this act without having paid in full the license required by this act, and without having the receipt and notice for such license posted up as required by this act, or without having made, executed and delivered the bond required by this act, or shall in any manner violate any of the provisions of this act, such person or persons shall be deemed guilty of a misdemeanor, and upon conviction thereof, if there is no specified penalty provided therefor by this act, shall be punished by a fine of not less than $50 nor more than $500 and costs of prosecution, or by imprisonment in the county jail not less than ten days nor more than thirty days or by both such fine and imprisonment in the discretion of the court; and in case such fine shall not have been paid at the time such imprisonment expired, the person serving out such sentence shall be further detained in jail until such fine and costs shall have been fully paid as provided by statute; and any person or persons engaged in any business requiring the payment of a license under section 1 of this act who, after paying the license so required, shall be convicted of a violation of any of the provisions of this act shall

thereby, in addition to all other penalties prescribed by this act, forfeit the license so paid by him or them and be precluded from continuing such business for the remainder of the year or time for which said license was paid and be debarred from again engaging in any business requiring the payment of a license under section 1 of this act or from becoming a surety or sureties upon any bond required under section 6 of this act from the time of such conviction. Each violation of any of the provisions of this act shall be construed to constitute a separate and complete offense, and for each violation on the same day or on different days the person or persons offending shall be liable for the penalties and forfeitures herein provided and be precluded and debarred from continuing or engaging in any business requiring the payment of a license under this act as aforesaid. And it shall be the duty of the sheriffs, marshals, constables and police officers to forthwith close all saloons and other places where the business of manufacturing, selling or keeping for sale any of the liquors mentioned in section 1 of this act is being conducted upon which business the license required by section 1 has not been paid in full and in which the receipt mentioned in section 4 of this act shall not be posted up and displayed."

Section 6 provides for the execution of a bond, and its form. The condition of the bond is as follows:

"That he will not directly or indirectly by himself, his clerk, agent or servant, at any time sell, furnish, give or deliver any spirituous, malt, brewed, fermented or vinous liquors, or any mixed liquors, or any mixture or compound, any part of which is spirituous, malt, brewed, fermented or vinous liquors, to a minor or to any adult person whatever who is at the time intoxicated, nor to any person in the habit of getting intoxicated, nor to any person when forbidden in writing to do so by the husband, wife, parent, child, guardian or employer of such person, or by the supervisor of the township, mayor of the city or president or trustee of any town, or member of the board of county commissioners of the county in which such person shall reside or temporarily remain; that he shall also pay all damages, actual and exemplary, that may be adjudged to any person or persons for injuries inflicted upon him or them either in person or property, or means of support or otherwise, by reason of his selling, furnishing, giving or delivering any such liquor."

Section 7 further defines the duty of the county treasurer. Section 8 provides for the prosecution of violations of the act by the state's attorney. Section 9 provides that the treasurer shall make certain reports. Section 10 provides for the punishment of willful neglect of any officers charged by the act with any duty. Section 11 provides it shall be unlawful to sell to certain persons, such as minors, intoxicated persons, or any person in the habit of getting intoxicated, or to any person when forbidden in writing so to do by the husband, wife, parent, child, guardian, or employer of such person, or the supervisor of the township, or the president or trustee of a town, mayor of the city, board of county commissioners of the county, where said person shall reside or temporarily remain. No person under the age of 21 years shall be licensed to sell intoxicating liquors, and it shall be unlawful for any person having a license to sell intoxicating liquors to employ as a bartender any person under the age of 21 years. Section 12 provides that windows and doors of buildings in which intoxicating liquors are sold shall be unobstructed by screens, blinds, paint, or other articles, and that the windows shall not be located in such a manner as to prevent the free and unobstructed view from the street into the entire room or place where any of the intoxicating liquors mentioned in section 1 are to be sold. There shall be no partition of any kind in the room where the liquor busi-

ness is conducted, and no games of cards, dice, billiards, or pool, or any other game of skill or chance whereby money or any other valuable thing is usually wagered, are to be played in the room or place wherein intoxicating liquors are to be sold, or in any other room or place adjacent thereto. Section 13 provides that a minor shall not be allowed to enter, visit, or remain in such room, or place, unless accompanied by his or her father, mother, or guardian. Section 14 provides that all places where intoxicating liquors are sold shall be closed on Sunday and on all election days, and on each week-day night from and after the hour of 11 o'clock until 5 o'clock in the morning on the succeeding day. Said section also provides that it shall be the duty of sheriffs, marshals, and police officers to close all saloons, houses, or places found open in violation of the provisions of this act. Section 15 provides for the punishment of the violation of the previous section. Section 16 provides how damages shall be recovered by parents who may suffer damages by reason of the violation of such law. Section 17 further describes the duties of officers. Section 18 prescribes the duties of justices of the peace and police justices. Section 19 describes the persons liable for the violation of the same. Section 20 makes it unlawful to adulterate any spirituous or alcoholic liquors. Section 21 provides for the payment of a city license. Section 22 provides that a license may be refused in certain cases. Section 23 prescribes for the submission to the voters of the township, town, or city in this state of the question as to whether intoxicating liquors are to be sold at retail. Section 24 provides for application to be made in writing. Section 26 provides that intoxicating liquors shall not be sold within a certain distance of any public or private school. Section 27 provides that pharmacists may sell for certain purposes.

Upon a consideration of the whole of this act, it clearly appears that it is an act within the police powers of the state, and within the permission granted by congress to legislate in relation to commerce, when connected with intoxicating liquors. But the state cannot, even in the exercise of its police power, discriminate against interstate commerce, and if this act, in its effect, treated the wholesaler of malt liquors who manufactures within the state the same as it treats the wholesaler of malt liquors who manufactures without the state, there could be no fault found with this law, in my opinion; but I am unable to find otherwise than that there is a clear and unlawful discrimination against malt liquors manufactured without the state, in favor of those manufactured within the state, and that this discrimination is so great as to impose a substantial burden upon interstate commerce, as connected with the sale of malt or brewed liquors manufactured without the state. The vital question in this case is, therefore, not whether this law is within the police powers of the state, but, admitting it to be so, whether it unlawfully discriminates against an article of interstate commerce manufactured without the state. Section 1, hereinbefore quoted, imposes—

"Upon the business of selling only brewed or malt liquors at wholesale, $600 per annum, said license to be paid in each township, precinct, town or city in which said wholesaler has or operates a warehouse or depository."

In the same section it is provided as follows:

"No person, firm or corporation having a manufacturer's license in this state on brewed or malt liquors under this act, shall be liable to pay a wholesale dealer's license on the product of such manufactory."

The effect of these two provisions is this: A license fee of $600 per annum must be paid by any person, in every township or precinct where he has a place of sale, if his malt or brewed liquor is manufactured without the state. On the other hand, any person who manufactures brewed or malt liquors in this state, and has paid a manufacturer's license, is entirely exempted from paying a wholesale dealer's license in malt liquors on his product, although he may have a dozen different depositories in the state, where he wholesales malt or brewed liquor. Or, to state it in other words, any person who desires to sell brewed or malt liquors manufactured in another state at wholesale in this state must pay a wholesaler's license of $600; but any person who shall desire to sell at wholesale brewed or malt liquors manufactured by him in this state under a manufacturer's license is entirely exempted from paying the license required of wholesalers. This would seem to be a clear discrimination against an article of interstate commerce manufactured in another state, and is clearly such a substantial burden imposed upon that commerce as to render the law under consideration void in so far as it imposes a license fee of $600 on the wholesaler of malt liquors. The effect of this discrimination can be illustrated by supposing that the complainant desired to establish in 20 different places in this state a depository for the sale of malt or brewed liquors manufactured by itself outside of this state. It would be necessary, under the law, for the plaintiff to pay $12,000 per annum for this privilege, whereas any person who paid a manufacturer's license of $400 per annum in this state could establish the same number of places to sell malt or brewed liquors at wholesale without paying anything. It must be borne in mind that the act of congress of 1890, giving the states permission to pass laws within their police power in relation to the sale of intoxicating liquors, whether in original packages or not, did not and could not do away with the requirement of the constitution of the United States prohibiting a discrimination by any state against the products of interstate commerce manufactured in other states. Therefore the following decisions, whether made before or after the act of 1890, are pertinent, and fully sustain the proposition that the law in question, in so far as it imposes a license fee of $600 per annum upon the plaintiff for wholesaling its brewed or malt liquors in this state, manufactured in the state of Minnesota, is void, for the reason that no such license fee is required of persons who manufacture beer in this state, and pay a manufacturer's license: In Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347, the supreme court decided: That a license tax required for the sale of goods is in effect a tax upon the goods themselves, and that a statute of Missouri which required the payment of a license tax from persons who deal in the sale of goods, wares, and merchandise which are not the growth, produce, or manufacture of the state, by going from place to place to sell the same in the state, and requires no such license

tax from persons selling in a similar way goods which are the growth, produce, or manufacture of the state, is in conflict with the power vested in congress to regulate commerce with foreign nations and among the several states. That the power to regulate commerce was vested in congress to insure uniformity of commercial regulation against discriminating state legislation. It covers property which is transported as an article of commerce from foreign countries, or among the states, from hostile or interfering state legislation until it has mingled with and become a part of the general property of the country, and protects it, even after it has entered a state, from any burdens imposed by reason of its foreign origin. And in Guy v. City of Baltimore, 100 U. S. 434, 25 L. Ed. 743, the supreme court decided that a state cannot, in the exercise of her taxing power, impose upon the products of another state, brought within her limits for sale or use, a more onerous burden or tax than upon like products of its own territory, nor discriminate against a citizen by reason of his being engaged in thus bringing or in selling them; and that an ordinance of the city of Baltimore whereunder vessels laden with the products of other states are required to pay, for the use of the public wharves of that city, fees which are not exacted from vessels landing thereat with the products of Maryland, is in conflict with the constitution of the United States; and that such fees, so exacted, must be regarded, not as a compensation for the use of the city's property, but as a mere expedient or device to foster the domestic commerce of Maryland by means of unequal and oppressive burdens upon the industry and business of other states; and that, so far as it may be necessary to protect the products of other states and countries from discrimination by reason of their foreign origin, the power of the national government over commerce with foreign nations and among the several states reaches the interior of every state of the Union. In Walling v. Michigan, 116 U. S. 446, 6 Sup. Ct. 454, 29 L. Ed. 691, the supreme court decided that a tax imposed by statute of the state of Michigan upon an occupation, which necessarily discriminates against the introduction and sale of the products of another state, or against the citizens of another state, is repugnant to the constitution of the United States; that the police power of a state to regulate the sale of intoxicating liquors and preserve the public health and morals does not warrant the enactment of laws infringing positive provisions of the constitution of the United States; that a state statute which imposes a tax upon persons who, not residing or having their principal place of business within the state, engage there in the business of selling or soliciting the sale of intoxicating liquors to be shipped into the state from places without it, but does not impose a similar tax upon persons selling or soliciting the sale of intoxicating liquors manufactured in the state, is a regulation in restraint of commerce, repugnant to the constitution of the United States, and the defect is not cured by a subsequent enactment imposing a greater tax upon all persons within the state engaged in the business of manufacturing or selling such liquors therein. In Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 128, the supreme court had under consideration a statute of

the state of Michigan (Pub. Acts 1887, No. 313, p. 445) almost identical in its language and provisions with the one now being considered. Section 1 of the Michigan act provided:

"That in all townships, cities and villages of this state there shall be paid annually the following tax upon the business of manufacturing, selling or keeping for sale, by all persons whose business, in whole or in part, consists in selling or keeping for sale,' or manufacturing, distilled, or brewed or malt liquors or mixed liquors, as follows: Upon the business of selling or offering for sale spirituous or intoxicating liquors, or mixed liquors by retail, or any mixture or compound, excepting proprietary patent medicines, which in whole or in part consist of spirituous or intoxicating liquors, and any malt, brewed or fermented liquors, $500 per annum; upon the business of selling only brewed or malt liquors at wholesale or retail, or at wholesale and retail, $300 per annum; upon the business of selling spirituous or intoxicating liquors at wholesale, $500; or at wholesale and retail, $800 per annum; upon the business of manufacturing brewed or malt liquors for sale, $65 per annum; upon the business of manufacturing for sale spirituous or intoxicating liquors, $800 per annum. No person paying a tax on spirituous or intoxicating liquors under this act shall be liable to pay any tax on the sale of malt, brewed or fermented liquors. No person paying a manufacturer's tax on brewed or malted liquors under this act shall be liable to pay a wholesale dealer's tax on the same."

The supreme court in this case said:

"Under the statute in question, which is entitled 'An act to provide for the taxation and regulation of the business of manufacturing, selling, keeping for sale, furnishing, giving or delivering spirituous or intoxicating liquors and malt, brewed or fermented liquors or vinous liquors in this state, and to repeal all acts or parts of acts inconsistent with the provisions of this act,' an annual tax is levied 'upon the business of selling only brewed or malt liquors at wholesale or retail, or at wholesale and retail,' of $300, and 'upon the business of manufacturing brewed or malt liquors for sale, $65 per annum.' The manufacturer of malt or brewed liquors made outside of the state of Michigan cannot introduce them into the hands of consumers or retail dealers in that state without becoming subject to this wholesale dealer's tax of $300 per annum in every township, village, or city where he attempts to do this. The manufacturer in the state need only pay the manufacturer's tax of $65, and is then exempt from paying the tax imposed on the wholesale dealer."

And the law of Michigan, for this discrimination, was held unconstitutional and void.

Numerous other cases could be cited in support of the position here taken, but it is sufficient for this court that the supreme court has declared the law in the language herein quoted.

It was objected at the argument that the bill of plaintiff was fatally defective in not alleging that there were persons engaged in the manufacture of malt or brewed liquors within the state of South Dakota, and selling the same at wholesale. This objection is not well taken. The question is not what is actually being done under a statute that determines its constitutionality, but what may be done under and by virtue of its provisions.

It was also urged on the argument, that it did not appear from the bill that the amount in controversy in this action was sufficient to give the court jurisdiction. I do not think that this position can be successfully sustained. The value of the plaintiff's warehouse, which it is alleged is useless for any other purpose, together with the destruction of plaintiff's business, which is shown to be a profitable

one, shows the amount in controversy to be within the jurisdiction of this court.

It is also urged that the case is not one over which equity has jurisdiction, for the reason that the complainant has an adequate remedy at law. I do not think the complainant would have a plain, speedy, and adequate remedy at law for the damages it would suffer, providing the defendants are allowed to seize and close its place of business. There might be a recovery for seizure of the warehouse, but the damages resulting from the destruction of plaintiff's business could not be compensated in an action at law. Again, the law provides that each day's business without the payment of the license fee constitutes a separate offense, and the law imposes heavy penalties for its violation. The jurisdiction of this court to restrain the officers of the state in the enforcement of an unconstitutional statute is well established. In the case of Reagan v. Trust Co., 154 U. S. 389, 14 Sup. Ct. 1051, 38 L. Ed. 1020, the language of Justice Lamar in the case of Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363, is quoted with approval, as follows:

"The other class is where a suit is brought against defendants who, claiming to act as officers of the state, and under the color of an unconstitutional statute, commit acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the state. Such suit, whether brought to recover money or property in the hands of such defendants, unlawfully taken by them in behalf of the state, or for compensation in damages, or, in a proper case, where the remedy at law is inadequate, for an injunction to prevent such wrong and injury, or for a mandamus, in a like case, to enforce upon the defendant the performance of a plain legal duty, purely ministerial, is not, within the meaning of the eleventh amendment, an action against the state. Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204; Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447; Tomlinson v. Branch, 15 Wall. 460, 21 L. Ed. 189; Litchfield v. Webster Co., 101 U. S. 773, 25 L. Ed. 925; Allen v. Railroad, 114 U. S. 311, 5 Sup. Ct. 925, 962, 29 L. Ed. 200; Board v. McComb, 92 U. S. 531, 23 L. Ed. 623; Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185."

In Vance v. W. A. Vandercook Co., supra, the jurisdiction of the United States circuit court for the state of South Carolina to issue an injunction enjoining the state officials of that state from interfering with the plaintiff in shipping its products from the state of California to the state of South Carolina, to its agents there, for the purpose of selling the same in original packages, was sustained for the reason that a law which provided that a citizen of South Carolina could not purchase intoxicating liquors from a nonresident without first having the same inspected was unconstitutional. The allegation of the bill in that case was that the defendants and other persons claiming to act as state constables and officials threatened "to seize, take, and carry away, detain, convert, and sell, to the manifest wrong, damage, and injury of your orator and its trade and business," its shipments of intoxicating liquor into that state. In Reagan v. Trust Co., 154 U. S. 413, 14 Sup. Ct. 1060, 38 L. Ed. 1028, the jurisdiction of the circuit court of the United States to restrain by injunction the officers of a state was sustained, where the law under which said officers were claiming to act was unconstitutional. Also, in the case of Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed.

819, the jurisdiction of the circuit court of the United States for the district of Nebraska to restrain certain officers of the state of Nebraska from enforcing an unconstitutional statute was also sustained. The case of North v. Peters, 138 U. S. 271, 11 Sup. Ct. 346, 34 L. Ed. 936, was an appeal from the supreme court of the territory of Dakota; and the supreme court in that case sustained the jurisdiction of a court of equity to perpetually enjoin one North, as sheriff of Lincoln county, from levying certain writs of attachment upon the property of Peters; the writs having been sued out by P. M. Lund & Co., and were about to be levied upon property in the possession of Peters, as having been conveyed by the former owner with intent to defraud creditors. Peters was in business at Canton. The court below found that the sale was valid, and that Peters was the lawful owner of the property. The supreme court, in the case last cited, said:

"The main ground relied on by the appellant is that the relief sought should be refused because the appellee had a plain, adequate, and complete remedy at law, to wit, either the action of trespass or replevin. The answer to this is that the measure of damages in an action of trespass could not have exceeded the value of the property seized, with interest thereon from the date of the seizure, and that the only remedy in an action of replevin would have been limited to a recovery of the property, and damages for its detention, with costs. It does not need argument to show that neither of these actions would afford as complete, prompt, and efficient a remedy for the destruction of the business, which, with the goods levied upon, constituted the appellee's entire estate and pecuniary resources, as would be furnished by a court of equity in preventing such an injury."

The case of Watson v. Sutherland, 5 Wall. 74, 78, 79, 18 L. Ed. 580, is, in its material facts, similar to this case. In that case a bill was filed by one Sutherland to enjoin the further prosecution of certain writs of fieri facias levied by the sheriff, Watson, on a lot of goods claimed to belong exclusively to the plaintiff, so as to prevent what the plaintiff alleged to be an irreparable injury, to wit, the ruin of his business as a merchant. The defense set up was, as in this case, that the injunction should have been refused, because the action of trespass furnished a complete and adequate remedy at law. In answer the court (Mr. Justice Davis delivering the opinion) said:

"How could Sutherland be compensated at law for the injuries he would suffer, should the grievances of which he complains be consummated? * * * Commercial ruin to Sutherland might, therefore, be the effect of closing his store and selling his goods, and yet the common law fail to reach the mischief. To prevent a consequence like this, a court of equity steps in, arrests the proceedings in limine, brings the parties before it, hears their allegations and proofs, and decrees either that the proceedings shall be unrestrained, or else perpetually enjoined."

From a consideration of all the cases, I am of the opinion that this court has jurisdiction of the case presented by the bill, as a court of equity, and that that portion of the law in controversy which provides that a wholesale dealer in malt or brewed liquors shall pay a license fee of $600 per annum in each town or city where the business is carried on is unconstitutional and void, for the reason that persons who pay a manufacturer's license of $400 in this state are exempted from paying a wholesaler's license.

The only question that now presents itself is as to the relief that this court has the power to grant the complainant in this action. It is alleged in the bill that defendants, claiming to act in their official capacity, threaten to close said warehouse so operated and maintained by this plaintiff at said city of Madison aforesaid, and wrongfully and unlawfully threaten to prosecute criminally this plaintiff and its said local agent, under section 5 of said act, and to so prosecute for each violation committed on each day, if said warehouse was continued to be operated as aforesaid by plaintiff, or if plaintiff continued to transact the business theretofore transacted by it at said Madison. In so far as this bill seeks to enjoin the commencement of criminal proceedings, it cannot be maintained. A court of equity possesses no such power. This is settled by a uniform current of authorities in England for two centuries, and in this country from the foundation of its jurisprudence. In the case of In re Sawyer, 124 U. S. 210, 8 Sup. Ct. 487, 31 L. Ed. 405, the supreme court uses the following language:

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government. * * * Mr. Justice Story, in his Commentaries on Equity Jurisprudence, affirms the same doctrine. Section 899. And in the American courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike whether the prosecutions or arrests sought to be restrained arose under statutes of the state or under municipal ordinances."

See, also, Hemsley v. Myers (C. C.) 45 Fed. 283; Wagner v. Drake (D. C.) 31 Fed. 849.

This court in this action has, in my opinion, the right to restrain the defendants from closing the complainant's warehouse and place of business, as provided in section 5 of the act under consideration, for the nonpayment only of the license fee required of a wholesale dealer in malt liquor; and, within this limitation, the order will be that the demurrer be overruled, with leave to defendants to answer on or before the next rule day.