LUGO, PLAINTIFF AND APPELLEE, v. MUNICIPALITY OF LAJAS ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Mayagüez in Injunction Proceedings.

No. 2940.—Decided November 30, 1923.

INJUNCTION—MUNICIPALITY—OFFICERS AND AGENTS—DAMAGES—TRESPASS—IRREPARABLE INJURY—ACTS OF PUBLIC NATURE—MUNICIPAL OFFICERS.—An injunction will lie against officers and agents of a municipality, even where the municipality itself could not be mulcted in damages. Municipal officers may be reached for a threatened trespass producing what is understood at law to be an irreparable wrong, or one that can not be readily remedied in damages. If certain acts for which the municipality could not be mulcted in damages, as being acts of a distinctly public nature, are illegal, the officers and agents of the offending municipality may be restrained.

ID.—ID.—ID.—DELEGATION OF POWER—RATIFICATION—QUESTION OF FACT—COLORE OFFICII—GENERAL AUTHORITY—UNLAWFUL ACTS.—Whether a particular act,

operating injuriously to an individual, was authorized by the municipality by any previous delegation of power, or by any subsequent ratification of particular acts, is a question of fact to be decided by all of the evidence in the case. As a general rule, the municipality is not responsible for the unauthorized and unlawful acts of its officers although done *colore officii;* but it must appear also that they were expressly authorized to do the acts by the municipal government, or that they were done *bona fide* in pursuance of a general authority to act for the municipality on the subject to which they relate, or that, in either case, the acts were adopted and ratified by the municipality.

ID.—ID.—ID.—ID.— PLEADING—ANSWER—RATIFICATION—TORTIOUS ACTS—FINANCIAL RESPONSIBILITY—CONTINUANCE OF INJUNCTION—COSTS.—While the answer by the municipality in an injunction proceeding against it, insisting that the property was municipal property and that the inspector of public works was justified in destroying the fence constructed on it, may not be such a sufficient ratification of the tortious acts of the officers as to fix a financial responsibility upon the municipality, yet it is a ratification sufficient to justify the continuance of the injunction against the municipality and its officers; but the municipality should not be mulcted in costs.

The facts are stated in the opinion.

*Mr. A. A. Vázquez* for the appellants.

*Messrs. Benet & Souffront* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was an injunction to retain possession, brought by virtue of the special statutes of 1913 and 1917. It was brought against the municipality of Lajas and against the commissioner of public service of said municipality popularly known as the mayor. The court rendered judgment for the complainant, finding that the said commissioner in his official character went to the house of the complainant and ordered her to destroy a fence, saying that if she did not he would, and that employees of the municipality paid by the municipality tore down and removed the said fence, and that these acts were done by said employees with the authority and consent of the said commissioner of public service.

The municipality defended in the court below and, on appeal, alleges three grounds of error. The first two assignments, independently of the scope of the Acts of 1913 and 1917, raise a question of the responsibility of the munici-

pality for. the tortious or supposed *ultra vires* acts of its officers.

The conduct of Tomey, the mayor, one of the defendants, and also one of his witnesses, was remarkable indeed, especially the conduct of Tomey. He was disposed to deny and evade every question put to him and had to be reprimanded by the judge over and over again. Nevertheless, it appeared with sufficient clearness that the officers of the municipality claimed the property in question for the municipality. It sufficiently appeared from the defendant's own testimony that the fence was destroyed, if not under a claim of right, then because the various officers of the municipality thought that the fence prevented the free passage of the citizens of Lajas. This was the declaration of the inspector of public works and the inevitable inference from the rest of the evidence was that he was backed by the mayor. We have no doubt about the responsibility of the defendant mayor, but a different problem is presented with respect to the responsibility of the municipality.

An injunction will lie against officers and agents of a municipality, even where the municipality itself could not be mulcted in damages. *Welton* v. *Dickson,* 22 L. R. A. 496, citing the leading case of *Watson* v. *Sutherland,* 5 Wall. 74; *Ferrer* v. *Gutiérrez,* 28 P. R. R. 425; *Minneapolis Brewing Company* v. *McGillivray,* 104 Fed. 271; *Carter et al.* v. *Warner,* 89 N. W. 747. These authorities show that even municipal officers may be reached for a threatened trespass producing what is understood at law to be an irreparable wrong or one that cannot be readily remedied in damages.

We need not consider the general subject of injunctions at any great length, because the subject matter of this suit would be reached by Act No. 11 of November 14, 1917, p. 220 of the laws of that year, as follows:

"Section 1.—That an injunction for the retention or recovery

of material possession of real property shall be granted on petition of the interested party provided he shows to the satisfaction of the court that he has been disturbed in his possession or tenancy of said property by acts showing intention of disturbing or depriving him of such possession, or when he has already been deprived of said possession or tenancy.''

Under this act a property holder in Porto Rico is protected against the unlawful acts therein specified as against any other individual or entity. The act is general and will protect a person suffering injury from the acts of the agents of a corporation.

Therefore, the principal question before us is whether the municipality was responsible for the act of its agents and officers to such an extent that its officers and agents might be enjoined from a further prosecution of the acts of which complaint is made. Incidentally, we may say that the authorities convince us that certain acts for which the municipality could not be mulcted in damages as being acts of a distinctly public nature, if the said acts were illegal the officers and agents of the offending municipal corporation might still be restrained.

*Haskell* v. *City of New Bedford,* 108 Mass. 208, was an action of tort against the city for entering the plaintiff's close and putting up a post and preventing him from placing a building upon the same, and the court said:

''No evidence was offered whether the place in question was or was not a public highway. If it was, the building and post were public nuisances, and the plaintiff had no right of action for their exclusion or removal from the street (citing cases). If it was not a public highway, the mayor had no authority, either by virtue of his general powers or as a surveyor of highways, to accept or declare it to be such, so as to bind the city (citing cases). Acts done by the mayor and aldermen, or the mayor alone, to keep the streets clear of obstructions, are acts done by them as public officers, and not as agents of the city, and for such acts the city was not liable to be sued (citing cases).

"Such acts do not stand upon the same ground as acts done by municipal officers in maintaining or repairing a building owned by the city, and for which it receives rent like any other owner; Thayer v. Boston, 19 Pick. 511; Oliver v. Worcester, 102 Mass. 489; or in constructing or repairing, within the authority conferred by a statute accepted by the city, a common 'sewer, declared by law to be the property of the city, and the expenses of which it is authorized to assess upon the abutters (citing authorities); or under votes of a town, in repairing a bridge or highway which the town is obliged to keep in repair, and causing damage to property outside the limits of the way, as in Hawks v. Charlemont, 107 Mass. 414."

Similarly, in *Manners* v. *Haverhill,* 135 Mass. 171, the court held that the act complained of did not appear to have been done under any vote of the city council of the city, or in reference to any property which the city claimed to own, or in the performance of any work which the city was specially authorized to do or in which the city had a corporate interest distinct from that of the inhabitants generally of the Commonwealth, and holding that *Thayer* v. *Boston,* 19 Pick. 511, *supra,* was not applicable.

This last named case is the leading one in the subject matter and also points the exception from the rule of the non-liability of a municipal corporation. We shall quote two paragraphs from the opinion of Chief Justice Shaw, as follows:

"There is a large class of cases, in which the rights of both the public and of individuals may be deeply involved, in which it can not be known at the time the act is done, whether it is lawful or not. The event of a legal inquiry in a court of justice, may show that it was unlawful. Still, if it was not known and understood to be unlawful at the time, if it was an act done by the officers having competent authority, either by express vote of the city government, or by the nature of the duties and functions with which they are charged, by their offices, to act upon the general subject-matter, and especially if the act was done with an honest view to obtain for the public some lawful benefit or advantage,

reason and justice obviously require that the city, in its corporate capacity, should be liable to make good the damage sustained by an individual, in consequence of the acts thus done. It would be equally injurious to the individual sustaining damage, and to the agents and persons employed by the city government, to leave the party injured no means of redress, except against agents employed, and by what at the time appeared to be competent authority, to do the acts complained of, but which are proved to be unauthorized by law. And it may be added, that it would be injurious to the city itself, in its corporate capacity, by paralyzing the energies of those charged with the duty of taking care of its most important rights, inasmuch as all agents, officers, and subordinate persons, might well refuse to act under the directions of its government in all cases, where the act should be merely complained of and resisted by any individual as unlawful, on whatever weak pretense; and conformably to the principle relied on, no obligation of indemnity could avail them.

＊          ＊          ＊          ＊          ＊          ＊          ＊

"Whether a particular act, operating injuriously to an individual, was authorized by the city, by any previous delegation of power, general or special, or by any subsequent adoption and ratification of particular acts, is a question of fact, to be left to a jury, to be decided by all the evidence in the case. As a general rule, the corporation is not responsible for the unauthorized and unlawful acts of its officers, though done *colore officii;* it must further appear, that they were expressly authorized to do the acts, by the city government, or that they were done *bona fide* in pursuance of a general authority to act for the city, on the subject to which they relate; or that, in either case, the act was adopted and ratified by the corporation."

It will thus appear that a municipal corporation can be held responsible for the tortious acts of its officers and agents where the municipal corporation ratifies the acts of its agents, and this is supported by some conspicuous cases in Louisiana. *McGary* v. *City of Lafayette,* 4 La. Ann. 440; *Wilde* v. *City of New Orleans,* 12 La. Ann. 15.

Similar decisions are to be found in *Sheldon* v. *Village of Kalamazoo,* 24 Mich. 383; *Persons* v. *Valley City,* L. R. A.

1916 D, 1079, with its annotation on page 1088. Likewise, Dillon on Municipal Corporations, 1651.

In the answer of the defendants under the heading of "New Matter" appears the following:

"(*a*) The land on which the inhabited part of the town of Lajas is situated belongs to the Municipality of Lajas and the said municipality had been in possession of the land prior to the dates referred to in the complaint.

"(*b*) On the 15th of April, 1922, and prior to that date, José Dolores Irizarry was an inspector of public works of the Municipality of Lajas and the said municipality having been ousted by the plaintiff without its consent from a strip of land used by the public situated on Amistad Street of Lajas by fencing it in with rusted and unsanitary sheet-iron, the said Irizarry without being authorized by any of the defendants, but complying with the urbanization regulations, proceeded to destroy and did destroy the said fence, restoring the said strip of land to its former condition for the use of the public."

This was the answer of the mayor and the municipal corporation jointly, and the mayor, under section 29 of the municipal act, has authority to represent the said municipality. The answer, therefore, so far as the municipality was concerned, was insisting that the property was municipal property and that the inspector of public works was justified in destroying the fence. While we may question whether this answer is a sufficient ratification of the tortious acts of the various officers of the community as to fix a financial responsibilty on the municipality, yet we think that it is a sufficient ratification to continue the injunction against the municipality, its agents and officers. In no other way could the complainant be completely assured that the officers of the municipality might not continue to destroy her fence. We do not think, however, that the municipality should be mulcted in costs.

The third assignment, without due specification, relates to the evidence and several questions are raised.

We find that the property, the yard in question, was thoroughly identified.

The case of *García* v. *Rodríguez*, 27 P. R. R. 284, cited by appellants, has no real application. There was a naked trespass in that case, but here the officers of the municipality entered under a claim of right and destroyed property. Hence, it makes no difference that the acts were not repeated. Indeed, it would have been difficult without an injunction for the complainant to restore her fence under the direct or implied threats of the municipal officers. The case of *Del Valle* v. *Rivera*, 23 P. R. R. 587, was prior to Act No. 11 of 1917.

The judgment should be modified so as to read as follows: The case coming on to be heard, the court is of the opinion that the law and the facts are in favor of the complainant; and, as a consequence, renders judgment holding that the complaint should lie and ordering that the complainant, María del Carmen Lugo, should retain the possession of the *patio* of the following described property (describing it), and the defendant, the Municipality of Lajas, and the mayor thereof, or any other agent or officer of the said municipality, are required, for themselves or any of their employees, to refrain from committing any act tending to molest or deprive the complainant of the possession of the yard of the property described or disturb her in any way in the material possession of the same, and the mayor, José Tomey, is mulcted in costs and counsel fees; but without any imposition of costs against the defendant municipality, and, thus modified,

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.