### CITIZENS' ST. RY. CO. *v.* JONES.[1]

*(Circuit Court, E. D. Arkansas.   March 15, 1888.)*

1. MUNICIPAL CORPORATIONS—CONTROL OF STREETS—DELEGATION OF AUTHORITY.
     When a statute authorizing a municipal corporation to contract "for the purpose of providing street railroads," and conferring, "for the time which may be agreed upon, the exclusive privilege of using the streets and alleys of such city for such purpose," it is the actual use of the streets for the purpose which confers the exclusive privilege, and the exclusive right to use the same attaches only when the use or its equivalent begins, and the city has no power under such a grant to devolve on any contractor the duties it owes to the public of determining when and on what streets the public convenience requires a line of road.

2. SAME—CONSTRUCTION OF GRANT.
     Where an instrument is susceptible of two interpretations, one of which will antagonize the law and render it invalid, and the other will harmonize with law and give it validity, the latter interpretation will be adopted.

3. SAME—GRANTS OF FRANCHISES—CONSTRUCTION.
     Grants of franchises by public corporations are to be strictly construed, and no exclusive privileges pass unless by express words or necessary implication.[2]

In Equity.    Bill to restrain the building of a street railway by defendant, plaintiff claiming the exclusive privilege in the city by virtue of a contract with the city.

---

[1] Reported by Messrs. Stephenson & Trieber, of the Helena bar.

[2] Respecting the power of a state or municipality to create a monopoly, see Stein **v.** Supply Co., 34 Fed. Rep. 145, and note; Teachout **v.** Railway Co., (Iowa,) 38 N. W. Rep. 145.

*J. M. & J. G. Taylor*, for plaintiff.
*White & Parker*, for defendant.

CALDWELL, J.    The foundation of the plaintiff's case is an ordinance of the city of Pine Bluff, passed on the 4th day of February, 1885, and adopted as a contract on the 24th day of March, 1885.    The provision of the contract on which the case turns reads as follows:

"That for the purpose of providing for a single-track street railway or street railways, the said party of the first part [the city of Pine Bluff] does hereby grant unto the said party of the second part [John O'Connell, Frank Silverman, and Sam Fies] and their assigns, for the term of ninety years from the date of this contract, the right of way on, over, and along the following streets, to-wit:    All of Barraque street, all of Broadway street, all of Fugate street, all of Newton street, their present and future limits, and all other streets within the present and future corporate limits of the city of Pine Bluff, as the parties of the second part think public necessities require, with the exclusive privilege of using said streets and said designated portions thereof for the purpose of constructing, operating, maintaining, and owning such street railway thereon."

The contract required the construction, within three years from its date, of a railway over the following streets:    On Fugate from Broadway to Barraque, thence on Barraque to Newton, thence on Newton to Broadway, and thence on Broadway to Fugate; but by a later ordinance this requirement was so modified that the company was only required to build, within three years, a railway on Barraque street for a distance of 10 blocks, and the company is under no obligation to construct any more railroad in the city during the life of the contract—90 years.    The plaintiff is assignee of the contract.    On the 9th day of August, 1886, the city entered into a contract with the defendant, Wiley Jones, whereby he was authorized to build and operate a street railway on certain named streets in the city, on which the plaintiff has not constructed, and does not propose to construct, such a railway.    The object of this suit is to enjoin the defendant from constructing or operating a street railway on the streets of the city included in his contract, upon the ground that the plaintiff under its contract has an exclusive right to the use of all the streets of the city for street railway purposes, and that this exclusive right is not restricted to the streets on which it has constructed its railway, but extends as well over all the streets of the city upon which it has not constructed, and does not propose to contruct, such railway.

The power granted to the mayor and council to contract on this subject, is, as the act in terms declares, "for the purpose of providing * * * street railroads," and it is for that purpose they are authorized to grant "for the time which may be agreed upon the exclusive privilege of using the streets and alleys of such city for such purpose. * * *" Section 755, Mansf. Dig.    It is the actual use of the street for the purpose that confers the exclusive privilege.    The city council has not the power to agree that if the contractor will build a street railway on one street in the city he shall be under no obligation to build on any other street for 90 years, and that for that period the city shall not itself build

such railway on any street in the city, or authorize it to be done by others, however much the public convenience and necessity may demand it. The effect of such a contract is not to give the exclusive privilege of using the streets for the purpose of constructing and operating a street railway over them, but it is to give the contractor the exclusive privilege of preventing their use for that purpose. Under such an agreement the contractor occupies the position of "the dog in the manger." He need not use the streets for a railway himself, and he can prevent the city and all the world from using them for that purpose, regardless of the public wants and necessities. The power and duty of determining when and on what streets the public convenience requires street railroads is devolved by law on the city council, and that body cannot refuse to discharge this function, or devolve it on a street-car company, whose action would be controlled by its own, rather than the public interests. But this is exactly what it is said was done. Whether any more than a few hundred feet of railroad, on one street, should be constructed in a populous and growing city for a period of 90 years, is left to the discretion of the street-car company; or, as it is expressed in the contract, "as the parties of the second part think public necessities require." The present company affects to "think" the public convenience and necessities do not require a street railway on the streets over which the defendant, by authority of the city, has constructed one. It declined to build the road itself, and seeks to prevent the defendant from operating the one he built. The city council was the proper tribunal to determine the public needs in this matter, and, when it did so, and authorized the defendant to build his road on streets not used or occupied by the plaintiff, and which it was under no obligation to so use or occupy, the council was discharging its duty to the public, and one of its lawful functions under the law of its creation, of which it could not divest itself by any ordinance or contract. But it is said that when in the opinion of the city council the public needs require street railroads on streets over which the plaintiff declines to build, the city can purchase from the plaintiff by condemnation proceedings, if the price cannot otherwise be agreed upon, the privilege to build on such streets, and in this way repossess itself of the right and power to meet the public wants and necessities. The plaintiff is mistaken in supposing it could gain exclusive dominion and authority over all the present and future streets of the city, so far as relates to their use for street railroads, without building or incurring any obligations to build a street railroad on them. The favor was greater than the city council had the power to bestow. The right to the exclusive use of a street for a street railway, under the statutes, attaches when the use begins, or what is equivalent to that, when it has been stipulated for, and assured by an obligatory contract. Here there is no such use, and no such stipulation or contract. But the contract does not give the plaintiff the boundless exclusive privilege claimed. It grants "the exclusive privilege of using said streets and said designated portions thereof for the purpose of constructing, operating, and maintaining and owning such street railway thereon." This clause of the contract must receive the same construction as the act au-

thorizing the city council to make it.   The exclusive privilege is limited
to the streets used "for the purpose of constructing, operating, maintain-
ing, and owning such street railway thereon," or in other words, to the
streets on which the plaintiff shall build and operate a street railway.
This construction makes the contract harmonize with the powers of the
city council under the law.   When an instrument is susceptible of two
interpretations, and one will put it in antagonism to the law, and render
it invalid, and the other will make it harmonize with the law and give
it validity, the latter interpretation will be adopted.   It is also a canon
of construction that grants of franchises by public corporations to indi-
viduals or private corporations are to be strictly construed, and no ex-
clusive privilege passes, unless it be plainly conferred by express words
or necessary implication.

Let an order be entered sustaining the demurrer and dismissing the
bill for want of equity.