UNION STREET RAILWAY CO. *v.* SAGINAW CIRCUIT JUDGE.

1. STREET RAILWAYS—FORFEITURE OF FRANCHISE.

   Under 1 How. Stat. § 3548, providing that no street-railway company shall construct a railway in the streets of any municipality until it shall have accepted in writing the terms and conditions upon which it is permitted to use such streets, a city may properly reserve the right to forfeit the franchise of a company in case of its failure to pay the cost of paving between its tracks.[1]

2. SAME—INSOLVENCY.

   The inability of the company to make such payment affords no legal excuse for its default.

3. SAME—NECESSITY FOR JUDICIAL DETERMINATION.

   Where the franchise of a street-railway company provides that it may be forfeited by the city for a breach of condition, and the fact of a breach is undisputed, there is no necessity for the city to resort to the courts before proceeding to enforce the forfeiture by removing the tracks from the streets.

4. SAME—EQUITY—INJUNCTION.

   The circuit judge is justified, however large the interests involved, in refusing a preliminary injunction to restrain a city from enforcing a forfeiture of the franchise of a street-railway company, where it appears that the city is proceeding in exact accordance with the terms of its contract with the company.

*Mandamus* by the Union Street-Railway Company to compel Byron A. Snow, circuit judge of Saginaw county,

---

[1] The power of a city to impose conditions when giving consent to a street railway is considered in a note to *Galveston, etc., R. Co.* v. *Galveston,* (Tex.) 36 L. R. A. 33.

to issue a preliminary injunction restraining the city of Saginaw from removing relator's tracks from the streets. Submitted June 28, 1897.   Writ denied July 13, 1897.

The relator either owns or leases the entire street-railroad system of the city of Saginaw, and is, and has been for several years, operating the same.   The common council of the city, claiming to act under its charter and contract with the relator, was proceeding by the appropriate resolution to declare the relator's franchise forfeited, and to take steps to enforce such forfeiture by removing its tracks from the streets.   It thereupon filed a bill in chancery in the circuit court for the county of Saginaw, to restrain the city from taking the threatened action.   It prayed for a preliminary injunction.   The city answered, claiming the right to forfeit the franchise on account of the default of the relator in complying with the terms of its franchise.   The court refused the preliminary injunction, and the purpose of this petition is to obtain the writ of *mandamus* to compel the chancery court to issue a preliminary injunction restraining the city from taking the threatened action until the final hearing of the cause.

*De Forest Paine* (*C. A. Kent*, of counsel), for relator.

*E. L. Beach* (*G. W. Weadock*, of counsel), for respondent.

Grant, J. (*after stating the facts*).   The facts are not in dispute.   All the material facts alleged in the bill of complaint are admitted in the answer.   The rights of the parties can therefore be determined upon bill and answer as effectually as could be done upon a hearing upon proofs.

The city and the relator entered into a mutual contract, evidenced by an ordinance, under which the relator obtained the right to lay its tracks upon and to use the

streets under certain conditions. This contract is binding upon both parties, and, when either violates it, it must suffer the consequences agreed upon by the contract. Section 9 of the ordinance provides for laying, altering, and changing the tracks upon the streets, and, in regard to pavements, contains the following provision:

"When any street or avenue in which the track or tracks of said railways are laid shall be ordered paved, repaired, or otherwise permanently improved by the order of the common council, the board of public works shall, upon the completion thereof, make an estimate of the cost of so much pavement or other improvement as shall be included within the limits of said railway track or tracks, and also between the double tracks, and the amount so estimated, except the cost of paving at street intersections, shall be paid by the companies, their successors or assigns, to the city, one-fifth part in one, two, three, four, and five years thereafter, with interest at the same rate as borne by the 'Street Improvement Bonds' issued by the city for the making of such improvements. The cost of paving all street intersections shall be paid on demand; and the city shall have the right to recover the amount so estimated from said companies; and also the right, in case of default in the payment thereof, or of any judgment obtained therefor, to forfeit, after 30 days' notice, all rights and privileges of said companies, their successors and assigns."

Section 16 provides that if the relator—

"Shall willfully and unreasonably neglect to observe and obey such reasonable rules, orders, or regulations as the common council may, under the provisions of this ordinance, make, * * * the common council may, by a vote of two-thirds of the aldermen elect, revoke the privileges and authority hereby granted."

This section also provides for the service of a 30-day notice upon the relator to comply with its contract, before the city can proceed to forfeit. Under this ordinance, there is now due and unpaid from the relator to the city, for paving, for the years 1895 and 1896, $7,000 or over, and

other large amounts still to grow due, and other streets ordered to be paved, for which the relator, under the ordinance, will become obligated to pay other amounts. The reason averred for this failure is that the relator is unable to pay. It alleges that its directors have advanced $80,-000; that its earnings are not sufficient to meet its charges for running expenses, repairs, and interest.

The sole question, therefore, presented is: Does the insolvent condition of the company furnish a legal excuse for noncompliance with its contract, or, in other words, does the law permit it to use the streets of the city in violation of its contract, without paying the consideration agreed upon, simply because the investment has proved a losing one? If this question be answered against the relator, is it entitled to a preliminary injunction until the hearing?

It is true that, as alleged, the plant has cost about $500,-000, and that it is mortgaged for $300,000 or more. This, however, does not affect the question. The rights of the parties are not to be determined by the amount involved. There is no doubt about the terms of the contract. Both parties entered into it with a full understanding that the situation now existing might arise, wherein the relator either could not or would not pay the amounts which from time to time it agreed to pay. As a consequence of such neglect or failure, it was solemnly agreed that the city might, through its common council, revoke its franchise, and remove its tracks from the streets. Inability to pay is no excuse. Can one party to a contract be relieved from its performance because he is unable to perform, and the other still be bound? To so hold would be to introduce a new element in determining contractual rights. The universal rule is that he who fails to perform, from whatever cause, must suffer the consequences which he has agreed to suffer. Corporations form no exceptions to the rule. Inability to pay may serve as an excuse when parties are arraigned for contempt of court

for nonpayment, but it has never been held to furnish an excuse for violating the contract. *People* v. *Gravel-Road Co.*, 105 Mich. 9.

The case of *Shriver* v. *Bean*, 112 Mich. 508, has no application to this case. There the plaintiff, a city officer, was proceeding without the authority of the city, and at a time prohibited by law. In this case the city is proceeding in exact accordance with the terms of its contract, and it requires no citation of authorities to show that, when a party is proceeding in exact accordance with the terms of its contract, courts of equity will not interfere by their restraining process. Counsel for the city concede that, if the contract simply provided for a forfeiture, it would be compelled to proceed in the courts. This rule does not apply where the contract specifically provides that the municipality may declare the forfeiture. "The distinction between the two cases is that, if the franchise itself provides for forfeiture on breach of certain of its stipulations, there is no necessity for judicial determination that the breach warrants a forfeiture." Cros. Electricity, § 160. Here the breach is conceded, and the contract gives the city the option to forfeit. It has exercised this right. There is therefore nothing for a court to adjudicate. The relator's obligations to the city amount to about $35,000, of which $7,000 is due. It cannot pay. It does not offer to pay. Evidently, there is no expectation that it will be able to pay. It attempts to read into its contract that inability to pay shall relieve it from performance. This would result in making a contract in plain violation of the one made by the parties. This, courts cannot do. When a party confesses that he cannot perform his contract, equity will not inferfere to prevent the other party from enforcing his legal rights.

The contract entered into by these parties is fully sanctioned by the statute. 1 How. Stat. § 3548. This section provides that no street-railway company "shall construct any railway in the streets of any municipality until it

shall have accepted in writing the terms and conditions upon which it is permitted to use such streets," etc. The following authorities fully sustain the city in its proposed action, and the respondent in refusing to issue the writ of injunction: *City of Belleville* v. *Citizens' Horse-Ry. Co.*, 152 Ill. 171; *Pacific R. Co.* v. *City of Leavenworth*, 1 Dill. 393; *People* v. *Gravel-Road Co., supra; Spokane St. Ry. Co.* v. *City of Spokane Falls*, 46 Fed. 322. It is not claimed on behalf of the city that any of the property of the relator is forfeited to its use. It simply claims the right, under the contract, to order the relator to remove its property, and, upon its refusal, to remove it as an obstruction to the streets. The circuit court did not abuse its discretion in refusing to issue a preliminary injunction. This is not a case requiring a judicial finding, under the rule of *Flint, etc., Plank-Road Co.* v. *Woodhull*, 25 Mich. 99 (12 Am. Rep. 233), *City of Detroit* v. *Plank-Road Co.*, 43 Mich. 144, and *Shriver* v. *Bean, supra.*

The writ is denied.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred with GRANT, J.

HOOKER, J. I concur in the above. I also think the granting or denial of an injunction a matter of discretion, which is not reviewable.