MERCANTILE TRUST CO. OF NEW YORK v. CITY OF DENVER et al.

(Circuit Court, D. Colorado. February 13, 1908.)

No. 3,904.

1. STREET RAILROADS—GRANT OF FRANCHISE BY MUNICIPALITY—TERM.

A grant by a city to a street railroad company of the right to construct and operate tracks in its streets, without any limitation as to time, is one at least for the term of the corporate life of the grantee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, § 42.]

2. SAME—RIGHT OF REPEAL—EFFECT OF USER.

Where a city granted to a street railroad company the right to construct and maintain tracks "along and across the streets of the city," and the company has constructed and put in operation lines in conformity to a system which contemplates their extension, and the building of branch lines as public needs may require or justify, the city cannot arbitrarily, and without cause, repeal the grant except as to tracks at the time constructed and in operation, and an ordinance attempting such repeal is void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, § 50.]

In Equity.

Charles J. Hughes, Jr., for complainant.

N. Walter Dixon, for defendants.

LEWIS, District Judge. On February 5, 1885, the Denver Electric & Cable Railway Company was incorporated for a term of 50 years, under Colorado laws, for the purpose of constructing and operating a street railway in the city of Denver. On the same day the city council of said city, by ordinance, gave it a franchise to carry out the purpose of its organization. The first section of said ordinance is as follows:

"Section 1. That the right of way be, and the same is hereby granted, to the Denver Electric and Cable Railway Company, its successors and assigns, to build, operate and maintain a single or double track railway, with switches, turn-outs, side tracks and other appliances necessary for the operation of the same, in, along and across the streets of the city of Denver, said railway to be operated by power transmitted by use of electricity or by cable."

161 F.—49

By assignment, all rights under the ordinance passed to the Denver Consolidated Tramway Company, which executed a mortgage on October 11, 1893, conveying all its property, rights, and franchises to the complainant, in trust, to secure payment of $4,000,000, evidenced by its five per cent. gold bonds, a large amount of which have been issued for value, and are now outstanding.

By a subsequent assignment, all property of said cable company and all rights under the ordinance, passed to the Denver City Tramway Company, a corporation under the laws of Colorado, which latter company assumed and agreed to pay the above-mentioned and other large, mortgage indebtedness on its property and franchise rights under said ordinance. The bill was filed on May 24, 1899, to protect the alleged rights of the holders of said bonds. The relief sought was injunction against the city council, restraining it from passing an ordinance repealing said ordinance of February 5, 1885. At the time the bill was filed street car lines had been constructed under said ordinance on some of the streets of said city, and were then in operation, but the proof does not show the exact length of said lines at that time. A temporary writ issued restraining the repeal of the ordinance in so far as it might attempt to affect the rights of the street car company in any streets in which it had, at that time, constructed its lines under said ordinance, but was denied as to all unoccupied streets.

Thereafter, on July 15, 1899, said city council passed the following repealing ordinance:

"That Ordinance No. 3, Series of 1885, entitled 'An ordinance granting a right of way to the Denver Electric and Cable Railway,' and Ordinance No. 9, Series of 1885, entitled 'An ordinance to amend an ordinance entitled "An ordinance granting a right of way to the Denver Electric and Cable Railway Company,"' and Ordinance No. 28, Series of 1888, entitled 'A bill for an ordinance to amend section eight (8) of Ordinance No. 3 of 1885,' be, and the same are hereby, repealed; provided, however, that this ordinance shall not apply to or in any manner affect any rights which the Denver Electric and Cable Railway Company, its successors and assigns, may now have in relation to any electric street railway lines at present constructed, and now in actual operation in said city of Denver."

At the time the granting ordinance of 1885 was passed the population of Denver was less than 100,000. It is now estimated at about 200,000, and the city does not deny that new lines have been constructed and prior ones extended to meet public necessities as population increased and extensions in new territory were needed; nor does it complain in any manner of the service rendered by the street car company. In other words, the city asserts no cause or reason as justification for the repealing ordinance of 1899, other than mere power. There are no conflicting rights of another grantee claiming similar privileges, here involved.

Since the repealing ordinance of 1899 was passed the city has denied the right of the street car company to construct new lines or extend old ones under the ordinance of 1885, and has passed other ordinances limited in time to 20 years, for such extensions and new lines, whereas the street car company has at all times claimed the right to make such extensions and construct new lines under the ordinance of 1885. It

further asserts and shows that it has expended vast sums in way of paving and other improvements under ordinances passed requiring it to do so wherein its rights under ordinance of 1885 were recognized; and while it concedes that it formally accepted the new ordinances, or most of them, for extensions and new lines, it did so under protest and because the city would not permit such extensions and new lines in any other way.

1. At the outset it may be seriously inquired whether the bill and proof entitle the complainant to any relief.

If the purpose of the bill seeks a control by the court over, or interference with, the legislative discretion or power of the city council, such relief could not be granted and the bill would have been dismissed on demurrer. Mo. & K. I. Ry. Co. v. City of Olathe (C. C.) 156 Fed. 624, and cases cited; Tebbetts v. People, 31 Colo. 461, 73 Pac. 869, and cases cited.

But inasmuch as the defendants ask that the matter be determined on its merits, and more especially because the case was taken to the Court of Appeals on the issuance of the temporary writ and was remanded without suggestion on·this point, we proceed to further consideration.

2. A large part of the argument was directed to the question as to the length of term of the easement—the complainant contending that it is in perpetuity. The ordinance does not, in express words, fix the term of the easement granted. And while the defendants made some claim that the ordinance gave a mere revocable license, that position cannot be sustained. The defendants also cited authorities to the effect that in such a case as this the easement should be construed to extend during the term of the life of the grantee. Louisville Trust Co. v. Cincinnati, 76 Fed. 296, 22 C. C. A. 334; Turnpike Co. v. Illinois, 96 U. S. 63, 24 L. Ed. 651; Toll Roads Co. v. People, 22 Colo. 429, 45 Pac. 398, 37 L. R. A. 711.

The defendant's insistence on the doctrine of these cases appeared as a concession that the rights of the street car company under the ordinance of 1885, whatever they may be, will not expire until February 5, 1935; and if such concession be not made, the rights granted to it must extend, under the authorities, at least to that time. This being true it becomes immaterial, for the purposes of this case, to determine whether the easement is in perpetuity. Until that time in 1935 has been reached it is a moot question whether its rights under the ordinance extend beyond February 5, 1935.

3. It is lastly urged by the city that the ordinance of 1885 is void as to any rights which it attempted to give the street car company on any streets not built upon prior to the repealing ordinance; because, it says, such a grant in attempting to give an easement over all the streets is an unauthorized delegation of power by the city council to the street car company, in that it assumes to give the company the right to select the streets on which it will build and at such times as it may choose, and on all of them if it so desires; and that thus the ordinance violates every principle of public policy, when we bear in mind the purposes for which such grants are made. In support of this contention it cites, particularly: Mayor of Knoxville v. Africa, 77 Fed. 501, 23 C. C. A. 252, Citi-

zens' Ry. Co. v. Jones (C. C.) 34 Fed. 579, and Logansport Ry. Co. v. Logansport (C. C.) 114 Fed. 688.

The conclusion in the Knoxville Case may be considered as largely justified and reached on the provisions of the Tennessee statute there under consideration, which are not found here. The Jones Case was an exclusive grant, and the facts there, aside from the ordinance, amply supported the conclusions of the court. The grantee would neither construct the line itself, nor consent that others might do so.

It will be noticed that the ordinance of 1885 does not give, expressly by terms, an easement on all the streets. Neither is it shown or claimed that an attempt has ever been made by the street car company to build on any street where public necessities did not require a new line or an extension, nor has it failed to build or extend its lines when and wherever needed, nor has there ever been dispute between the council and street car company in this regard. The interests of the company would necessarily dictate the building of new lines and extensions when and where public demands required it; and if for that purpose there were sufficient reasons why one street rather than another should be occupied, I doubt not that the police power, which cannot be surrendered and may be invoked at all times by the council, is amply sufficient to control the company in that respect. In fact, ordinances of the city, in force at the time of the repeal, provided that no excavation should be made in any street, and no railway of any kind should be constructed in any street or avenue, until a permit had been issued for that purpose. In addition to this, an act of the Colorado Legislature approved April 4, 1877 (Gen. Laws 1877, § 2655, subd. 60), and still in force, requires the written consent of the owners of land representing more than one-half of the frontage on the street before such street can be occupied by a street railway. So, the asserted fear that the public may be annoyed by street cars operated on the four sides of every city block does not appear to be a possibility, either in fact or in law.

The repealing ordinance was passed without any reason assigned or now claimed. It was and is, professedly, the mere exercise of a naked power, which the city asserts the street car company and the complainant have no right to challenge. The company appears to have planned, almost in the inception of its efforts, a system radiating from a central point in the business section of the city from which its cars start, extending in different directions, and to which they return. From its main lines in the central part branches have been, and from time to time as public demand requires, necessarily will be taken off, and lines have been, and will be, as it was intended, extended to meet the city's growth. Can it be said, that after this system was partly built, under large expenditures, extending but a few blocks in either direction, and branches taken off here and there but a short distance, the other party to the contract may then terminate it without cause? Is not this a violation of the whole purpose and intent of the agreement? Is not the exercise of the power to repeal the ordinance of 1885 nothing short of an attempt to destroy the company's property? If such repeal is a valid exercise of power, the company could not thereafter make extensions in any direction. Its whole purpose and plan is thereby thwarted.

The foundation of its system has been laid, but it cannot proceed. It is left with a useless trunk covering but a few blocks in the central part of the city. Its usefulness, both to the public and the company, has been destroyed without cause and without its being heard. A just and salutary rule covering the situation here, is announced in Elliott on Roads and Streets (2d Ed.) § 752:

"While it is, we believe, true that some act must be done vesting the inchoate right conferred by general grant, still, we do not regard it as essential that manual possession should be taken of all of the streets or roads embraced in the general grant or license. If the company having the prior right enters upon the work of constructing a system, and with reasonable diligence, and in good faith, does actually construct a considerable part of the system, it ought not to lose its rights unless it has failed to comply with a proper demand to complete the system, or has unreasonably delayed its completion."

This text is quoted with approval in Indianapolis Cable S. R. Co. v. Citizens' Street R. Co., 127 Ind. 369, 24 N. E. 1054, 26 N. E. 893, 8 L. R. A. 539, and that court then adds:

"Where a company has entered upon the construction of a particular system of street railroads, and has expended its money in the prosecution of the work, it would be manifestly unjust to permit some other person or company, after the commencement of the work, to jump in and appropriate any portion of the streets involved in such system, while the former was diligently prosecuting the work, and thus destroy the system, to the ruin of the company engaged in its construction. If this could be done no person or company would undertake the construction of a system of street railroads; but to hold the right to such system, money should be expended in its construction, and the work, with a view of its completion, should be diligently prosecuted without intermission, unless stopped by circumstances over which the projector has no control."

The street car company had, at the time of the attempted repeal, a prior, though inchoate, right under the ordinance of 1885, to extend its lines and complete its system as public necessity might demand in keeping with the growth of the city; and the city was without power to terminate its rights in that regard except for cause. It does not claim that any such cause existed at the time of the passage of the repealing ordinance. Said repealing ordinance having been passed without right, and in violation of the rights of the street car company and of those whom the complainant represents, the same is void.

A decree to that effect will be entered, with costs against the defendants.