*KNICKERBOCKER TRUST CO. v. CITY OF KALAMAZOO et al.*

(Circuit Court, W. D. Michigan, S. D.    August 23, 1910.)

1. COURTS ·(§ 311*)—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—SUIT BY MORTGAGEE.

A mortgagee of all of the property of a street railroad company as trustee for bondholders has a right of action in equity in its own right to enjoin a city from unlawfully depriving the company of its franchise, and to compel the company to comply with all lawful ordinances and regulations of the city essential to preserve the franchise, and, where it is a citizen of another state, may maintain a suit therefor in a federal court against both the city and company which are citizens of the state in which the suit is brought, its interest, while in some respects the same as that of the company, being separate and distinct therefrom, and such as it has the right to protect independently.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 311.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249, Mason v. Dullagham, 27 C. C. A. 298.]

2. INJUNCTION (§ 65*)—RIGHT OF ACTION AGAINST CITY—THREATENED FORFEITURE OF FRANCHISE.

A suit may be maintained to enjoin a city from forfeiting the franchise of a street railroad company which would result in irreparable injury to complainant, although the only action taken has been by the city council in citing the company to show cause why the forfeiture should not be made where the bill alleges, and the answer does not deny, the fixed intention of the city to declare the forfeiture, and the real issue made by the pleadings is as to its lawful right to do so.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 134; Dec. Dig. § 65.*]

3. STREET RAILROADS (§ 61*)—RIGHTS ACQUIRED BY FRANCHISE—POWER OF CITY TO REVOKE.

Under a franchise granted by a city to a street railroad company which provided that, on default by the company, its rights should cease and be forfeited and the city might take possession of the streets, and also of the tracks and cars of the company as security for the leaving of the streets in good condition, a forfeiture could not be declared ex parte by the city, but only judicially.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 50–54; Dec. Dig. § 61.*]

4. INTERPLEADER (§ 1*)—BILL IN THE NATURE OF—GROUNDS OF JURISDICTION—SUIT IN NATURE OF INTERPLEADER.

While a bill of interpleader, strictly so called, will not lie where complainant claims any interest in the subject-matter, yet equitable relief analogous to interpleader will often be granted in aid of complainant's interest, when there are other interconflicting interests.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

5. STREET RAILROADS (§ 57*)—CONTROVERSY BETWEEN COMPANY AND CITY—RIGHTS OF MORTGAGEE.

Where a city was threatening to forfeit the franchise of a street railroad company for default of the latter which had been in controversy be-

tween them for years, a mortgagee of the company having a property right affected *held* entitled to maintain a suit in equity analogous to a bill of interpleader against the city and company to require them to submit their controversy to the determination of the court.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 57.*]

6. TRIAL (§ 5*)—TIME—EXPEDITION BY COURT—CASES OF PUBLIC INTEREST.

In all cases where the court has taken some degree of control of public utilities or interferes with municipal regulation, the public interest requires that it take the burden of insisting that the controversy be ended with the utmost attainable speed.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 5.*]

7. INJUNCTION (§ 148*)—BOND.

Where the mortgagee of a street railway company seeks injunctional relief to prevent carrying out a proposed franchise forfeiture by the city for alleged defaults by the street railway company in franchise conditions, the mortgagee complainant should be required to give security that, if the street railway is found to be in default, the defaulted conditions will be performed. As to money defaults, such security may be by ordinary bond; as to defaults in quality of service, performance of which would require new equipment and the like, security should be by the mortgagee's agreement that it will either furnish the necessary funds or consent that receivers' certificates be issued.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 148.*]

In Equity. Suit by the Knickerbocker Trust Company against the City of Kalamazoo, the Michigan United Railways Company, and others. On motion for preliminary injunction. Motion granted.

Stevenson, Carpenter & Butzel and Davies, Stone & Auerbach, for complainant.

Marvin J. Schaberg, for defendant city of Kalamazoo.

E. M. Irish, for defendants Millheim, Fitz Geralds, and Ross.

Merriam, Yerkes, Simons & Ladd (Sanford W. Ladd and A. J. Mills, of counsel), for defendants Michigan United Rys. Co., Michigan Traction Co., and Michigan Traction Extension Co.

DENISON, District Judge. Upon filing the bill on November 29, 1909, Judge Knappen made an order to show cause why a preliminary injunction should not issue as prayed, returnable promptly, and a restraining order forbidding the city of Kalamazoo in the meantime from proceeding to forfeit the franchise of the Michigan United Railways Company. By agreement of counsel, the hearing of this injunction motion has been repeatedly continued, and by express consent of the city of Kalamazoo, by its counsel, the restraining order has been allowed to continue in force until this time. The motion has now been argued, and the argument has been made to cover the substantial merits of the case.

The Michigan United Railways Company is the owner of a franchise to operate a street railway in the city of Kalamazoo, and controversies arose between it and the city as to whether it was performing the obligations of its franchise. Different branches of this controversy resulted in different suits and proceedings in the state courts, and finally, on November 15, 1909, the city council passed a resolution reciting and finding that the railways company had not performed the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

frauchise conditions in the several particulars enumerated, and directing that notice be given to the railways company to show cause before the council on November 29th why the franchise should not be forfeited and annulled. Thereupon the complainant filed this bill showing that it was a citizen of New York, and was the trustee under a first and refunding mortgage made by the railways company, covering all of its property and franchises, pursuant to which mortgage there had been issued and certified bonds amounting to $9,000,000, of which approximately one-half had been sold to various investors, and approximately one-half was held by the trustee as collateral to existing, prior mortgages, or otherwise, pursuant to the terms of the refunding mortgage. The bill further shows the existence of various controversies between the city and the railways company, and alleges that it is advised and believes that the railways company is not in default in any particular. It further shows that the city claims the power to forfeit and revoke this franchise by the action of the city council, and alleges that it is about to take such action; that the proposed hearing or showing of cause would be a mere sham; that the city and the city authorities have determined upon such revocation and are engaged in a conspiracy to destroy the value of the franchise; and that the franchise and its full enjoyment are essential to the security of the mortgage creditors. The bill further shows that the railways company ought not to be permitted, either by acts of omission or commission, to bring about a forfeiture of its franchise, and that, if it is in default, it should be compelled to live up to the franchise provisions, to the end that the security of the bondholders may be maintained, and that the city of Kalamazoo should not be permitted to harass or damage unlawfully the assets of the railways company mortgaged to complainant, and thereupon prays that the railways company and the city be required to interplead and have in this court a judicial determination of the various matters in controversy. The complainant further offers "to do such equity as may be proper"; and, under this general offer, its counsel upon the argument proposed that, if defaults shall be found to exist and if the railways company does not remove such defaults, the complainant itself, if permitted, will do everything necessary to insure the performance of all franchise conditions.

The defenses urged against the bill are:

(1) That the city has not yet taken any action, but has only given notice preparatory to a hearing under the provisions of the franchise, and that it should not be presumed that the city intends to or will take any unlawful action.

(2) That this court cannot control the legislative action of a branch of the state government.

(3) Generally, that this court ought not, under the circumstances, to assume such a general control of the entire controversy as is invoked by the bill.

There is also always present the question of jurisdiction, which is claimed to exist both by diverse citizenship and by the presence of federal questions. The railways company is a citizen of Michigan, its interests are, certainly, in many particulars identical with the interests

of complainant, and, upon the argument of this motion, its counsel frankly joined in urging that the injunction be granted. The question must, therefore, be on this point whether the complainant as mortgage trustee has, under the terms of its mortgage and the general rules of law and in its own right, a complete and independent right to file such a bill and seek such relief in any competent court; and this question pertains to a situation where there has been no default in the conditions of the mortgage, but where it is alleged that the forfeiture of the franchise would necessarily precipitate a default.

It is suggested that the substantial injury claimed is one to the right of the mortgagor, in the nature of an injury to the possession, and hence that the mortgagee's interest is too remote to be the basis of an injunction bill; but the matter alleged here seems rather to be in the nature of an injury to the fee, analogous to waste in real estate, and under settled rules the mortgagee may have an injunction against waste. This is because he has an interest which enables him to maintain a suit in equity, and, excepting for the technical distinctions attending waste, it cannot be important whether the injury is done by the mortgagor or by a stranger.

Although it is true that the franchise was a contract between the city and the railways company, and that the trustee mortgagee is in a sense the assignee of that contract, yet the right of equitable action sued upon is not one which passed by the assignment, so that complainant sues as an assignee; nor is the suit one to enforce a promise made to complainant's assignor, as in N. Y. Guaranty, etc., Co. v. Memphis Co., 107 U. S. 205, 2 Sup. Ct. 279, 27 L. Ed. 484, and in American, etc., Co. v. Home Water Co. (C. C.) 115 Fed. 176. The claim is rather on account of a tortious injury done or threatened to the property rights and interests of the trustee long after the assignment of those rights and interests to it; and, while the railways company has a similar claim, yet the claim sued upon, affecting the mortgage interest, first accrued to the mortgagee. It is immediate and not derivative.

Nor are these similar claims and rights (one vested in the railways company and one in the mortgagee) so unitary or interdependent that the railways company must be aligned with the complainant, and the diverse citizenship jurisdiction thereby defeated. If the only thing sought was to prevent the city from revoking the franchise, this result might follow as said in Consolidated Water Co. v. San Diego, 84 Fed. 369 and cases cited; but the bill in this case goes much further, and shows interests distinctly adverse as between complainant and defendant railways company. It seeks, in substance, to prevent the city from enforcing unlawful requirements, and to compel the railways company to observe all ordinances and regulations which are lawful. The city is not only to be prevented from destructive action, but the railways company is to be driven into the necessary conserving action. It may be true that there is no actual quarrel between the trustee and the railways company at this time, and that the railways company wishes this action to be prosecuted; but the adversity of interest does exist sharply and distinctly.

The independent right of a mortgagee to bring such a suit is, to

some extent, supported by Clapp v. Spokane, 53 Fed. 515, Benson v. San Diego, 100 Fed. 158, and Paige v. Rochester, 137 Fed. 663. What seems to be the precise question is carefully stated and argued by McCormick, C. J., in Mercantile Trust Co. v. T. & P. Ry. Co., 51 Fed. 536. The cases which he cites (Peik v. Railway Co., 94 U. S. 164, 24 L. Ed. 97 and Stone v. Trust Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636), seem persuasive; and the result reached by Judge McCormick, and, apparently, his conclusion in this particular, were affirmed by the Supreme Court in the Reagan Cases, 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, and 154 U. S. 413, 14 Sup. Ct. 1060, 38 L. Ed. 1028. The Supreme Court found and decided a federal question, but it was necessarily implied that the trust company, complainant, could sue in its own right. So, too, the same opinion was announced, more or less obiter, by Rogers, District Judge, in Guardian Trust Co. v. White Cliffs, etc., Co., 109 Fed. 527, and as a step necessary to the result in Old Colony Trust Co. v. Wichita, 123 Fed. 767. This result was affirmed by the Circuit Court of Appeals (132 Fed. 641, 66 C. C. A. 19), but without mention of this point. A similar result involving the same point was reached in Mercantile Trust Co. v. Denver, 161 Fed. 769. The same general rules of equity jurisdiction prevailing in federal courts are recognized in Michigan. The Supreme Court of that state has in two cases permitted the mortgagee to maintain a bill largely or wholly to protect a franchise from forfeiture. Ralph v. Circuit Judge, 100 Mich. 164, 58 N. W. 837; Union Street Railway Co. v. Saginaw, 115 Mich. 300, 73 N. W. 243. In the latter case no foreclosure was sought, and the bill in the present case indicates that it was framed pursuant to the theory of this Saginaw Case.

The only intimation I find to the contrary is by McPherson, District Judge, in Illinois Trust & Savings Bank v. Minton, 120 Fed. 187. The circumstances were different from those now involved, and the comments made seem not applicable to the present situation.

My conclusion is that the mortgagee, as trustee, may in his own right, and not as assignee, demand an injunction to prevent unlawful, imminent, and irreparable injuries to the mortgaged franchise; that this right is distinct from, and independent of, any analogous right remaining in the mortgagor, and may be independently exercised; that the mortgagor has interests which may be adverse to some of the rights alleged and relief sought under the bill, and is therefore properly a party defendant; and hence that this court has jurisdiction of this case upon the ground of diverse citizenship alone.

As to the first defense: If the jurisdiction depended upon the constitutional provision against the passing of any law impairing the obligation of a contract, it might then be that the common council proceedings had not gone far enough to give a right of action, as no "law" had been passed, although, upon the general principles involved, I do not see why it should always be necessary to wait until the law has been passed before resorting to equity. It is elementary that an injunction will be granted to prevent injury which is only threatened, where that injury will, if the injurious act is allowed to be committed, be irreparable; and, if the element of irreparable injury

exists in the mere passage of a law which impairs the obligation of a contract, it would seem that its passage should be enjoined, and that the injured party should not be required to wait until after the injury has occurred, although this general conclusion, just stated, is subject to the embarrassments, if not obstacles, inherent in enjoining what is claimed to be legislation by a branch of the state government. In the case of a street railway franchise, it is apparent that the mere passage of a revoking or forfeiting ordinance or resolution would produce a great injury, even before any attempt was made to prevent the operation of cars, because, among other reasons, it would create a cloud upon the title of the property, would raise doubts as to the right to demand fares, would make innumerable controversies, and, generally, would create a public belief that the railway company had no right in the street. However, having reached the conclusion that jurisdiction by diverse citizenship exists, it will be sufficient to consider the threatened injury to property rights.

The argument that the city council had not determined anything, that it was only proceeding to a hearing, and that it might have made some order with which the railways company would have been satisfied to comply is not persuasive. Disregarding the allegations of the bill that the proposed hearing was to be a sham and that the matter was already decided, it is fairly apparent from the city's answer that it was definitely committed to the position, and by its answer recommits itself to the position that the railways company was in vital default in many particulars, and that the city had the power by a council resolution to forfeit the franchise, and that it was allowing the railways company to understand that the forfeiture would take place unless the railways company receded from at least some of its positions and yielded to some of the demands which the railways company considered unlawful. Upon the argument, too, the counsel for the city insisted that it claimed the power and the right to forfeit the franchise by declaration of the council, and this is really the vital thing in controversy. It would be rather idle to dismiss a bill because the franchise had not been actually declared forfeited, when the city was proceeding in that direction, and claimed the right to continue the proceedings to effect, and when its intention to do so was so strongly indicated as it is by the city's own actions and statements and positions in this case. If the danger of a declaration of forfeiture was not imminent, it would have been very easy to make that clear by a proper disclaimer of such intention.

As to the second defense: Reliance is had upon the Olathe Case, 156 Fed. 624. The general rule found in certain decisions of the Supreme Court and relied upon in the Olathe Case doubtless forbids that a federal court should often, if ever, enjoin proposed action by the legislative body of a city, which action is within the discretionary, legislative power of that body, however great a wrong such action may promote; but, if the proposed action of the common council in this case is wholly beyond its power, not within the limits of legislative discretion, and works injury to complainant's property rights, then, it is argued, that the rule does not apply, and that an injunction

to prevent such action should issue. In the Memphis Case, 96 Fed. 123, 37 C. C. A. 410, it was held that such a revocation wholly beyond the power of the council, was nevertheless enough of a "law" to impair the obligation of a contract, and it would seem to follow that it was sufficiently legislative to be exempt from antecedent injunction. However this may be, and if such an injunction should ever be issued, I do not think it called for by the circumstances of this case. The city as a contracting party and the council as a legislative body are distinct entities. The former may be enjoined from violating the contract, and may be held to a specific performance without interfering with strictly legislative action by the latter. So both the contracting city and its officers individually may be forbidden from doing any acts adapted to bring about, or in furtherance of, a proposed contract violation. The council is not a party defendant in this cause, and it is not essential that any order be made preventing the council from proceeding with any legislative action it may contemplate, but only that the defendants be prohibited from doing any acts promoting a forfeiture, or in execution of the proposed declaration of forfeiture. This distinction may be difficult to preserve accurately in all cases; but in this case it does not seem very material. The passage of such a resolution by the council would in view of the conclusions reached in this opinion be not only beyond the proper scope of its powers, but would also be doing a vain thing, because its execution would not be permitted, and it seems very improbable, under the circumstances, that the council would insist upon proceeding with such action so as to make it necessary to determine whether an injunction should be awarded directly against the passage of the proposed resolution.

Regardless of the form of the injunction, the underlying question is as to the power of the city to declare a forfeiture, and I am satisfied that the city has no power to determine that this franchise was forfeited, whatever the default of the railways company may be, but that such determination can be made only in a judicial proceeding, in a proper court, where both parties may be heard, and the issue, as to their respective rights, impartially determined.

In Union City Railway Co v. Saginaw Circuit Judge, 113 Mich. 694, 71 N. W. 1073, it was held that the common council had the right of forfeiture, but it appeared to have been an express provision of the franchise that, in case of default, "the city shall have the right * * * to forfeit * * * all rights and privileges of said companies," and also that "the common council may, upon a vote of two-thirds of the aldermen elect, revoke the privileges and authority hereby granted." Judge Grant's opinion recites that "council for the city concede that, if the contract simply provided for a forfeiture, it would be compelled to proceed in the courts"; and the decision is that, inasmuch as the breach or default was conceded, nothing remained calling for judicial action.

In the present case, the charter provision is that, in case of default, "then, after ten days' notice, the rights, privileges, interest, permission, and authority hereby granted shall thenceforth cease and be forfeited, and the said city of Kalamazoo be entitled to take posses-

sion of the streets over 'which said railway shall run, and also to hold possession of the property of said company, such as 'tracks and cars, as security that said company will leave said occupied streets in good condition for travel with such kind of improvements as may exist at the time said company ceases to comply with the provisions of this ordinance." Under such a provision for forfeiture, entailing such consequences, I think it can only be declared judicially. This, I think, would be the Michigan rule under the plank road cases cited in 113 Mich. 699, 71 N. W. 1073, but, at any rate, it is the authoritatively declared rule for this circuit. Iron Mt. Ry. Co. v. Memphis, 96 Fed. 123, 37 C. C. A. 410.

Another sufficient ground of jurisdiction is found in the alleged imminent danger that property will be taken without due process of law. Whether or not the proposed revoking resolution would be properly called legislation, and, even if it was within the power of the council to declare a forfeiture where the necessary basis of facts existed, such a declaration, where these necessary facts did not exist, and the attendant enforcement of the declaration by force might be a taking of property such as is forbidden by the fourteenth amendment. This, also, I understand to be the distinct holding of the Court of Appeals of this circuit in the Memphis Case. If the council is wholly without power to make the proposed declaration, then, it might be, as intimated in some of the cases, that the action would be of individuals only, and there would be no action of the state sufficient to violate the constitutional prohibitions (though the Memphis case seems to hold otherwise); but, if the council has any such power, then its unjustifiable exercise thereof should be prevented by way of enforcement of the "due process" clause.

The defendants insist that by dismissing the appeal in the Saginaw Case (168 U. S. 706, 18 Sup. Ct. 947, 42 L. Ed. 1214), the Supreme Court decided that no federal question was involved in such a controversy as this. I think that was not the point decided. It was held that where the courts of the state had construed a contract with a street railway company, and had found the true meaning of the contract to be that the railway company had consented to vest in the city the right of declaring a forfeiture, then no federal question was involved in this construction. To apply that rule to the present case would be begging the question, because, with reference to this contract, no state court has so held, and such construction appears to me quite unjustifiable.

As to the third defense, and generally: The bill by paragraph 41 makes a basis for relief in the nature of interpleader, although such relief is not specifically prayed. This is a formality, and it should be considered as asked for. A bill of interpleader, strictly so called, will not lie where complainant claims any interest in the subject-matter (Killian v. Ebbinghaus, 110 U. S. 571, 4 Sup. Ct. 232, 28 L. Ed. 246), but equitable relief, analogous to interpleader, will often be granted in aid of complainant's interest, when there are other interconflicting interests (Street's Fed. Eq. Pr. § 2235; Killian v. Ebbinghaus, 110 U. S. 572, 4 Sup. Ct. 232, 28 L. Ed. 246; Pacific National Bank v.

Mixter, 124 U. S. 729, 8 Sup. Ct. 718, 31 L. Ed. 567; Groves v. Sentell, 153 U. S. 485, 14 Sup. Ct. 898, 38 L. Ed. 785; Provident Soc. v. Loeb [C. C.] 115 Fed. 359). The only difference indicated by any of these cases between the procedure and relief appropriate to a strict bill of interpleader and to those analogous bills, is that in the latter the complainant cannot receive nontaxable costs out of the fund. Groves v. Sentell, supra.

In Blair v. Chicago, 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801, the Supreme Court approved the filing of a bill to settle a dispute with a city concerning the meaning, obligations, and performance of a street railway franchise; and, while that bill was filed by receivers in possession of the property, it seems to justify the present bill as in the nature of a bill of interpleader, if it be once conceded that a mortgagee has a property right for the protecting of which it may resort to an equity court. I conclude, therefore, that this case is a proper one for relief in the nature of interpleader, and that subsequent procedure and relief should conform to that theory. Such theory, carried out as indicated hereafter, seems to be a satisfactory solution, and perhaps the only one, of the existing complications, and a solution which will fully protect the rights of all parties and result in a speedy determination of all issues.

The bill of complaint can be amended as hereafter indicated, provided such amendment is made within 15 days. Such amendment will not affect the answers on file, which may stand as answers to the amended bill, and as the pleading basis of each party for the quasi-interpleader issue, provided that either party defendant may, within the same 15 days, amend its answer, as it may be advised, to perfect the same for the purpose of interpleader proceedings. As soon as the issues are thus perfected, they will stand referred to the master to take proofs and report his conclusion as to whether or not the railways company is in default in each one of the particulars alleged by the city in its answer, and, if it is, to what extent. Such proofs should be promptly taken, and the public importance of the controversy seems to require that it should take a considerable degree of precedence over other matters. In all cases where the court takes some degree of control of public utilities or interferes with municipal regulation, the public interest requires that the court take the burden of insisting that the controversy be ended with the utmost, attainable speed. Ninety days would seem to be ample time for the taking of the proofs, and 30 days further for the master's report. The court will then decide how much default, if any, exists, and whether it is of a nature to require a forfeiture, and, if so, will declare such forfeiture, and fix the conditions of performance by which it may be avoided. It is not intended by this procedure to interfere with the ordinary determination of any question of fact or of law now pending in any other court. At the opening of the proceedings before him, the master will ascertain which of the issues, covered by the answers in this case, are so pending, and, if it appears that there are any which are so pending and which are not desired by all the parties to be disposed of in this case, the master will report such situation to the court for further instructions in that particular.

While I have reached the conclusion that the common council cannot declare a forfeiture, yet it doubtless has the right to consider and to reach its own conclusion upon the questions of fact involved, and this right is of value in the course of its continued dealings with the railways company, and in the exercise of its continuing rights of regulation. It would not be fair absolutely to enjoin all action by the city on this subject during a period of time when it might by pressure be able to secure the performance of some conditions in default, and then leave it, at the end of the litigation, with an abstract decision in its favor, but without any security for such performance and in a condition where performance could not be enforced. The complainant, as a condition of having equitable relief, should provide whatever security the situation permits to the effect that the railways company will perform, if it is found in default. Only two of the alleged defaults seem to be capable of money satisfaction. They are the existing paving debt and the covenant to keep the surface of the streets in repair. These can be covered by an ordinary bond, and the complainant should give, or cause to be given, in its own name, or in the name of the railways company, a bond in the sum of $50,000, conditioned that the railways company will promptly perform and satisfy the decree of this court regarding any default in either of these particulars that may now exist or that may come into existence during the pendency of this suit, and that judgment may be entered on such bond on proceedings at the foot of the decree in this cause.

The other defaults, such as the use of unfit rolling stock, and general failure to give the stipulated service, are more serious, and cannot be covered by bond. They can be cured, if the railways company does not furnish them, only by advances by complainant in aid of its security, or by receiver's certificates duly issued for that purpose. I think the complainant's general offer to do equity should be made more specific, so that it cannot be misunderstood, and should be amended by a specific prayer that, in case forfeiture of the franchise should be contingently declared and the railways company should not perform the delinquent conditions, the bill be retained as a foreclosure bill, proceeding by virtue of the mortgage default which it would be then ascertained does now, in a substantial sense, exist; and that, in such case, unless the complainant furnish, or cause to be furnished, sufficient funds to permit and make possible the maintenance of the franchise, receiver's certificates be issued for that purpose. It will not be necessary now to incorporate in the bill all the formalities of a foreclosure bill, but only to make a sufficient basis for an amended or supplemental bill for that purpose and to commit the complainant to the position that it will either provide the necessary funds or co-operate in providing them through the means of receiver's certificates.

The three individual defendants have filed a demurrer on the ground that it is not proper to join them as individuals, I think the allegations of the bill make them proper parties, not so much for the sake of personal relief against them, as to have before the court the apparently responsible officials of the corporation, for the purpose of greater certainty in enforcing the decrees and orders to be made.

Their demurrer will be overruled, but with the understanding that, unless their individual conduct appears to have been beyond that indicated on the oral argument, no costs or damages will be awarded against them upon any final decree; and unless they, within 15 days, file individual answers, the answer of the city, in which they appear to have practically joined, will stand as their answer.

It does not follow from the action directed in this case that the equity courts should assume full jurisdiction of the entire controversy between the city and a public service corporation every time a dispute arises about the meaning of a franchise. On the contrary, such jurisdiction should be assumed reluctantly and only in extreme cases. I think, however, that where the controversy has been proceeding so long and has reached such a stage as indicated by the present bill, and has so many branches and the crisis is so imminent and the danger of irreparable injury is so great, a case is made out calling for the exercise of this jurisdiction.

A provisional injunction to continue until the further order of the court may issue prohibiting the defendants from doing any acts in violation of the franchise contract, or calculated to cause a forfeiture, or in furtherance of, or in execution of, the proposed forfeiture. This will not prevent the city from exercising the power of ordinary regulation, given by the franchise, in matters that may arise from time to time. It is intended only to apply to acts in connection with, or following on, the proposed forfeiture of the franchise for the reasons set up in the resolution of November 15th.